**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Felino RODRIGUEZ,**
**Defendant-Appellant.**

**No. 88–3604.**

United States Court of Appeals,
Sixth Circuit.

Argued May 23, 1989.

Decided Aug. 15, 1989.

Gregory Lockhart, Gary L. Spartis (argued), Office of the U.S. Atty., Columbus, Ohio, for plaintiff-appellee.

John F. Jackson (argued), Columbus, Ohio, for defendant-appellant.

Before MILBURN, Circuit Judge, PECK, Senior Circuit Judge, and ALDRICH, District Judge *.

MILBURN, Circuit Judge.

Defendant-appellant Felino Rodriguez ("defendant") appeals his jury conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant also challenges the sentence imposed upon him by the district court, arguing that the court erroneously departed from the sentencing range as established by the United States Sentencing Commission Guidelines ("the Guidelines").[1] For the reasons that follow, we affirm.

### I.

#### A.

On December 10, 1987, a federal grand jury returned a two-count indictment charging defendant as follows: Count I, knowingly, intentionally, and unlawfully possessing with the intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); and Count II, knowingly, intentionally, and unlawfully distributing cocaine also in violation of 21 U.S.C. § 841(a)(1). The indictment alleged this activity occurred on or about December 3, 1987.

A jury trial commenced on March 1, 1988, and on March 9, 1988, the jury returned a verdict of guilty with respect to Count I of the indictment but found defendant not guilty as to Count II. After a presentence investigation report was completed, the district court held a sentencing hearing on July 5, 1988. The court stated that application of the Guidelines required a range of imprisonment of thirty to thirty-

---

* Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The Supreme Court has recently declared that the Guidelines, promulgated by The United States Sentencing Commission, are constitutional. *Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

seven months. The court, however, departed from the guidelines and sentenced defendant to a six-year term of imprisonment to be followed by a five-year period of supervised release. The court also imposed a special assessment of $50.00. In imposing this sentence, the district court considered the facts and circumstances of the case and determined that an upward departure from the guidelines was warranted. This timely appeal followed.

### B.

In November 1987, detectives of the Franklin County, Ohio, Sheriff's Department were conducting an undercover investigation into drug activity in the northern area of Columbus, Ohio. During the course of this investigation, undercover detectives met with two individuals, Frank Hernandez and his girl friend, Janine Leonard, to discuss the purchase of narcotics. On November 24, 1987, Detectives Mike Spiert and Mike Powell drove to Hernandez's home located at 3552 Livingston Avenue, Columbus, Ohio, and purchased one ounce of cocaine for $1,400.00. To complete this transaction, Hernandez drove to 1368 Meadow Avenue, later identified as defendant's home.

During the November 24, 1987, meeting, the detectives and Hernandez also discussed a future purchase of one-half ounce of cocaine in exchange for a VCR, clothes, and $100.00. It was agreed that Hernandez would provide the detectives with one-half ounce of cocaine in trade for these items.

On November 27, 1987, Detective Spiert spoke with Hernandez about the possibility of purchasing eight ounces of cocaine. On December 1, 1987, Spiert went to Hernandez's home to discuss further the possibility of completing this cocaine transaction.

On December 3, 1987, Detectives Spiert and Powell went to Hernandez's home to complete the deal for one-half ounce of cocaine. During this time, Detective Spiert again mentioned the possibility of purchasing eight ounces of cocaine from Hernandez. No definite agreement was reached, and Hernandez left his apartment with Leonard to obtain the one-half ounce of cocaine.

When Hernandez and Leonard left, they were driving a cream-colored jeep. A surveillance team followed, but temporarily lost sight of the vehicle. The surveillance team later found the jeep parked at 37 McMillen Avenue, Columbus, Ohio. After a short time, the jeep left the McMillen Avenue address. The same surveillance team again lost sight of the vehicle for approximately three to five minutes but then located it at 1368 Meadow Avenue in Columbus.

During this time, members of another surveillance team were observing activity at 1368 Meadow Avenue. At approximately 2:30 p.m., a detective saw defendant pull into the driveway in a 1973 Ford. Defendant exited the vehicle and entered the house by use of a key.

A short time later, defendant was observed leaving 1368 Meadow Avenue and walking towards a nearby restaurant where the jeep was then parked. When defendant got to the jeep, the surveillance team noticed a female exit the jeep and enter the restaurant while Hernandez stayed in the jeep. Defendant got in, spoke to Hernandez, and then the female returned. She boarded the jeep, and the three then drove back to 1368 Meadow Avenue. Defendant, Hernandez, and Leonard went into the house, and approximately twenty minutes later, Hernandez and Leonard left.

A search of 1368 Meadow Avenue was conducted at approximately 4:30 p.m. on December 3, 1987. Defendant was apprehended in the back of the house without incident. He was taken inside and placed in the dining room area, where he stayed while the search was conducted. During the search, scales commonly used in drug trafficking were found. A briefcase was also found in a dresser, and when a police dog alerted police to the briefcase, it was opened. Inside the briefcase was approximately $5,850.00 in cash and identification papers belonging to defendant. In addition to the briefcase, cash, and scales, the

search revealed a loaded .25 caliber automatic handgun and eight ounces of cocaine in individually wrapped packages. Defendant was arrested after the detectives discovered the cocaine.

On appeal defendant raises four issues as follows: (1) whether the district court erred in denying defendant's motion for judgment of acquittal as defendant argues that insufficient evidence was presented to support the jury's verdict, (2) whether the district court erred in admitting certain rebuttal testimony, (3) whether the district court erred in permitting testimony regarding narcotics transactions occurring on November 24, 1987, and (4) whether the district court erred in departing from the Sentencing Guidelines.

## II.

### A.

Defendant argues that his motion for judgment of acquittal should have been granted as there was insufficient evidence to convince the jury beyond a reasonable doubt that he was guilty of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). We reject this argument because: (1) defendant did not preserve his right to challenge the sufficiency of the evidence; and (2) assuming defendant preserved this issue for purposes of appeal, sufficient evidence was presented to support defendant's conviction.

■ At the close of the government's case-in-chief, defense counsel moved for judgment of acquittal pursuant to Fed.R. Crim.P. 29. Defense counsel, however, failed to renew his Rule 29 motion at the close of all the evidence. "Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of *all* the evidence." *United States v. Faymore,* 736 F.2d 328, 334 (6th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984) (emphasis in original). *See also United States v. Van Dyke,* 605 F.2d 220, 225 (6th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *United States v. Denton,* 556 F.2d 811, 817 (6th Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977). Defendant has therefore waived his objection to the sufficiency of the evidence except to determine whether a "manifest miscarriage of justice" has occurred. *Faymore,* 736 F.2d at 334.

■ We conclude, however, that no such injustice has occurred in the present case. The evidence presented to the jury disclosed that when Hernandez told undercover detectives that he had to obtain cocaine for a given transaction, he drove to defendant's house. Hernandez then returned to conclude the cocaine transaction with the detectives. A search of defendant's house at 1368 Meadow Avenue produced eight ounces of cocaine. This amount was the same amount that the detectives were negotiating to purchase from Hernandez. The jury could infer from this evidence that Hernandez obtained his cocaine from defendant. Although the jury acquitted defendant on Count II, this is not inconsistent with the conviction on Count I regarding possession with intent to distribute cocaine.

■ Moreover, there was evidence showing that the defendant's possession of cocaine was with intent to distribute. The evidence consists of scales, commonly used to weigh drugs; cash, arguably obtained from drug transactions; and the handgun, which would be consistent with the protection and coercion common in transacting narcotics. Based on all the evidence, we find there was support for the jury's verdict and that no manifest injustice has occurred.

### B.

Defendant testified in his own behalf and during cross-examination denied ever holding a handgun near someone's face. In rebuttal, the government called a witness who testified that she was present when defendant drew a pistol and pointed it at an individual defendant thought might betray him. On appeal defendant asserts that the

district court should have excluded this testimony under Fed.R.Evid. 403 and 404.

■ We note that defense counsel failed to object to this testimony. Thus, our review is limited to determining whether plain error was committed in allowing the testimony. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Plain errors are limited to those so objectionable that they should have been apparent to the trial judge or that strike at the fundamental fairness, honesty or public reputation of the trial. *See United States v. Mendez–Ortiz,* 810 F.2d 76, 78–79 (6th Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *United States v. Perez,* 651 F.2d 268, 273 (5th Cir.1981).

■ We hold that it was not plain error to admit this testimony, which was relevant to impeach defendant's direct testimony. Counteracting the testimony of the defense is a permissible function of rebuttal evidence. *United States v. Posey,* 647 F.2d 1048, 1052 (10th Cir.1981); *United States v. Seely,* 570 F.2d 322, 324 (10th Cir.1978). *See also United States v. Horton,* 847 F.2d 313, 324–25 (6th Cir.1988). Moreover, as the government correctly asserts, the testimony was also relevant to the charges against defendant as it tended to show, albeit minimally, that defendant was involved in the sort of activities for which he needed forceful protection from informants. We find the district court did not commit plain error in admitting this testimony.

### C.

■ The indictment charged defendant with possession with the intent to distribute cocaine on or about December 3, 1987. In its case-in-chief, however, the government produced testimony that on November 24, 1987, two detectives purchased an ounce of cocaine at a price of $1,400.00

from Hernandez, an individual who the government argued obtained narcotics from defendant.[2] The government produced testimony that surveillance of Hernandez showed that to complete the transaction on November 24, 1987, Hernandez drove to defendant's home. Defense counsel objected to this testimony, noting that the government was attempting "to prove a prior criminal act to corroborate [the December 3, 1987] act and that's wrong." On appeal defendant asserts that this testimony was prejudicial and deprived him of a fair trial. The government, however, asserts that the evidence was admissible under Fed.R.Evid. 404(b) as showing the defendant's requisite intent, knowledge, plan, and scheme.

■ "[T]he district court has broad discretion in admitting evidence under Rule 404(b), and ... we may only reverse upon a finding of an abuse of that discretion." *United States v. Hamilton,* 684 F.2d 380, 384 (6th Cir.) (citing *United States v. Czarnecki,* 552 F.2d 698, 702 (6th Cir.), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977)), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982). *See also United States v. Hatfield,* 815 F.2d 1068, 1072 (6th Cir.1987). In admitting evidence under Rule 404(b), the court must determine whether the evidence is relevant to an issue for which it is admissible under the rule, and whether the probative value of the evidence is substantially outweighed by any undue prejudice. *See United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985); *United States v. Dabish,* 708 F.2d 240, 243 (6th Cir.1983).

■ We hold that the evidence regarding the November 24, 1987, transaction was relevant and admissible under Rule 404(b) as showing intent, plan, and knowledge. The government argued in this case that defendant and Hernandez were involved in distributing cocaine. This argument was supported by the evidence that on two separate occasions (November 24, 1987 and December 3, 1987) Hernandez

---

**2.** Evidence of a conspiracy, if relevant, may be admitted even though the indictment fails to include a conspiracy count. *United States v.*

*Wright,* 491 F.2d 942, 946 (6th Cir.), *cert. denied,* 419 U.S. 862, 95 S.Ct. 113, 42 L.Ed.2d 97 (1974).

traveled to defendant's home, at least inferably to obtain the cocaine which would then be resold to others. To make out the elements of its indictment, the government was required to show that defendant possessed cocaine with the intent to distribute it. Thus, the evidence relating to the November 24, 1987, transaction was properly admitted by the district court as probative of defendant's criminal intent to distribute cocaine.

■ Moreover, we hold that even if this evidence was improperly admitted, any error would be harmless given the government's evidence. *See United States v. Huddleston*, 811 F.2d 974, 978 (6th Cir. 1987), *aff'd*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Perez*, 871 F.2d 45, 47 (6th Cir.1989) ("We must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

### D.

As indicated, defendant was sentenced to a six-year term of imprisonment, a five-year period of supervised release, and a special assessment of $50.00. During the sentencing hearing, the district court noted that application of the Sentencing Guidelines required a period of imprisonment of thirty to thirty-seven months. The court, however, explained that the Sentencing Guidelines did not adequately take into consideration the circumstances of defendant's offense and thus departed upward from the Guidelines citing what it believed were aggravating circumstances in this case.

Review of the district court's opinion discloses that the court relied on several factors in departing upward as follows: (1) that defendant entered the United States illegally in 1980 before he had finished serving a prison term in a foreign country; (2) that defendant had not established any work skills in the United States; (3) that defendant had not established any record of employment; (4) that defendant had not acquired any knowledge of the English language; (5) that defendant had a prior drug conviction; (6) that defendant resorted to selling drugs shortly after being released

from a half-way house; and (7) that the court felt defendant would again resort to selling drugs or engage in other criminal activity once released from prison. Relying on these factors, the court departed upward from the Sentencing Guidelines, doubling the sentence defendant would have received pursuant to the Guidelines.

■ The Sentencing Reform Act of 1984 requires the district court to impose sentence within the range determined by application of the Sentencing Guidelines. However, the Act permits a court to depart from the Guidelines in certain instances. Thus, 18 U.S.C. § 3553(b) provides in relevant part:

The court shall impose a sentence of the kind, and within the range, referred to in [the Guidelines] *unless* the court finds that there exists an aggravating ... circumstance of a kind, or to a degree, *not adequately taken into consideration by the Sentencing Commission* in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (Supp.1989) (emphasis added). *See also United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.1989); *United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989); *United States v. Fisher*, 868 F.2d 128, 129–30 (5th Cir.1988). Under section 3553(b), the court may depart if circumstances exist which were not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The Sentencing Commission has explained that although it could theoretically restrict a court's departure authority by specifically indicating factors it has adequately considered, it has not attempted to do so: "[T]he Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case." Sentencing Guidelines and Policy Statements at 1.6–1.7 (April 13, 1987). The Commission has adopted this liberal departure policy for two reasons:

First is the difficulty of foreseeing and capturing a single set of guidelines that

encompasses the vast range of human conduct potentially relevant to a sentencing decision. The Commission also recognizes that in the initial set of guidelines it need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted.

Second, the Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often.

*Id.*

 Where a district court chooses to depart, "a short clear written statement or a reasoned statement from the bench" must support the departure. *Perez, supra,* 871 F.2d at 47. *See* 18 U.S.C. § 3553(c) (the court must provide a "specific reason for the imposition of a sentence" different from the Guidelines range); *De Luna–Trujillo,* 868 F.2d at 124 ("When a district court ... depart[s] ... it should articulate its reasons for doing so explicitly."). The court is not required to "incant the specific language used in the guidelines," *De Luna–Trujillo,* 868 F.2d at 124, but should "identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure...." *Id.* If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion. *Cf. Solomon v. Aetna Life Insur. Co.,* 782 F.2d 58, 61 (6th Cir.1986).

The Guidelines themselves discuss several situations where departures will be warranted as the Sentencing Commission was unable to incorporate into the Guidelines certain circumstances. Chapter 5, Part K of the Guidelines, indicates a number of circumstances not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The policy statement to Chapter 5, Part K, states in relevant part:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that an aggravating ... circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. *The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing.*

(emphasis added).

 The Guidelines also provide that certain offender characteristics were taken into account in formulating the Guidelines and found to be factors irrelevant to sentencing. *See* Chapter 5, Part H. Among these "nonfactors" are race, sex, and national origin. Guidelines § 5H 1.10. Thus, although there is language in the district court's statement of reasons for departure indicating that defendant, as an immigrant, had a special duty to "establish [himself] as [a] law abiding and productive member of ... society," J.A. at 112, we hold that defendant's national origin is not a factor which the court should consider in sentencing under the Guidelines. Moreover, we find that defendant's inability to speak English, while not specifically addressed in the Guidelines, is similarly a factor irrelevant to sentencing. *Cf.* Guidelines § 5H 1.2 (explaining that a defendant's education and vocational skills should not be considered in sentencing).

This court's review of a district court's decision to depart from the Guidelines is limited in the Sentencing Reform Act. Hence, 18 U.S.C. § 3742 provides for review of a sentence imposed pursuant to the Guidelines. Subsection (e) to section 3742 provides:

Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

Subsection (e) also indicates that "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). *See United States v. Mejia–Orosco*, 867 F.2d 216, 219 (5th Cir.1989).

As the First Circuit has indicated, review of a departure from the Guidelines requires essentially a three-step process:

First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal,

be measured by a standard of reasonableness. 18 U.S.C. § 3742(e)(2).... In this context, reasonableness is determined with due regard for "the factors to be considered in imposing a sentence," generally, and "the reasons for the imposition of the particular sentence, as stated by the district court...." 18 U.S.C. § 3742(d)(3).

*United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989) (citation omitted; footnote omitted). *See also United States v. Velasquez–Mercado*, 872 F.2d 632 (5th Cir. 1989) (under the Fifth Circuit's approach "[a] departure from the guidelines will be affirmed if the district court offers 'acceptable reasons' for the departure and the departure is 'reasonable.'") (quoting *Mejia–Orosco*, 867 F.2d at 219).

Defendant maintains that under 18 U.S.C. § 3742(e)(3), the district court's sentence is "unreasonable" as the court departed upward from the Guidelines' provisions in violation of section 3553(c). Defendant asserts that the evidence against him presented nothing unusual or substantially aggravating to warrant a departure.

■ Applying the three-step process employed by the First Circuit, we conclude the district court's sentence in this case was proper. We find three of the factors enumerated by the district court justify its departure. First, the court's reliance on the defendant's foreign conviction was proper. The policy statement to section 4A1.3 of the Guidelines specifically states that "a departure ... is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history [because] defendant ... [has] previous foreign sentences." Here, defendant was serving a foreign sentence at the time he came to the United States, and this fact justifies the court's departure.

■ Next, the district court found defendant exhibited a propensity to commit future crimes. This is also a factor which the Guidelines explicitly state will justify departure. Guidelines § 4A 1.3 ("A departure ... is warranted when the criminal

history category significantly under-represents ... the likelihood that the defendant will commit further crimes."). Defendant does not seriously challenge the court's factual finding in this regard and we do not consider it clearly erroneous.

 Third, the court found that defendant has maintained himself primarily through criminal activity since his arrival in the United States. Section 5H1.9 of the Guidelines states that "[t]he degree to which a defendant depends upon criminal activity for a livelihood is relevant in determining the appropriate sentence." Also, in section 4B1.3 the Guidelines establish a "floor" offense level for individuals who derive a substantial portion of their income from criminal conduct. Thus, in our view, "criminal livelihood," if not adequately reflected in defendant's offense level, may also justify departure.

Given these factors, we hold the district court's sentence was not unreasonable under 18 U.S.C. § 3553(c). We agree with the Fifth Circuit that "[t]he court's discretion to depart from the Guidelines is broad." *United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.1989). *See also United States v. Sailes*, 872 F.2d 735, 739 (6th Cir.1989) (review of a district court's sentence under the Guidelines should "preserve the concept that the discretion of a sentencing judge has a proper place in sentencing and should not be displaced by the discretion of an appellate court.") (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 150, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3333); *United States v. Brittman*, 872 F.2d 827 (8th Cir.1989) ("Under the Guidelines, sentencing judges retain discretion ... to depart from the Guidelines."); *United States v. Correa-Vargas*, 860 F.2d 35, 40 (2d Cir.1988) ("[D]istrict courts [should be permitted] sensible flexibility [to] promote the equally important purposes of just punishment, respect for the law and adequate deterrence...."). While one of the factors found in the present case standing alone might not support the court's sentence, seen as a whole, the sentence is permissible.

In sum, we are of the view that the district court's sentence was not unreasonable and that under section 3553(c), aggravating circumstances were present, not considered by the Commission, which warrant departure.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.