948 F.2d 1291
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Duane Alan SMITH a.k.a. Jameel Hakeem, Defendant-Appellant.
 No. 91-3100.
 United States Court of Appeals, Sixth Circuit.
 Nov. 19, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Duane A. Smith was convicted on charges of being a felon in possession of a firearm, possession of cocaine with intent to distribute it, and carrying a firearm during and in relation to a drug trafficking offense. He appeals his conviction on a number of grounds, including the use at trial of a statement allegedly exacted from him by federal agents in violation of his right to counsel and his right against self-incrimination. Finding none of the defendant's contentions persuasive, we shall affirm the conviction.
 
 
 2
 * In March of 1989 two Cleveland, Ohio, police officers spotted defendant Smith driving an automobile. Knowing of an outstanding warrant for Mr. Smith's arrest, the officers pulled him over.
 
 
 3
 The officers ordered Mr. Smith out of the car, placed him under arrest, and conducted a search of his person. Mr. Smith proved to be carrying a white paper packet containing what looked like cocaine, an electronic pager, and $45 in cash.
 
 
 4
 After advising Mr. Smith of his constitutional rights, the officers conducted an inventory search of the car. In the car (which, as it turned out, was titled to Mr. Smith) they found a Colt .45 caliber semi-automatic pistol. The pistol was under the driver's seat, where it was accessible to the driver. The weapon was loaded, its hammer was cocked, and the safety catch was off. Telling Mr. Smith that he faced a firearms charge, the officers advised him of his rights a second time.
 
 
 5
 The inventory search of the vehicle also disclosed seven paper packets similar to the one found on the defendant's person and a plastic baggie containing a "rock" of suspected crack cocaine.
 
 
 6
 Upon analysis by a laboratory, the contents of the eight packets and the baggie were determined to be cocaine hydrochloride and cocaine base, or crack cocaine, respectively. The packets had a net weight, without packaging material, of 1.28 grams; the rock of crack weighed approximately .2 grams. The packets were folded in a "pharmacy fold" widely used by dealers who package cocaine for retail sale. The drugs had a street value of over $300.
 
 
 7
 On the day after defendant Smith's arrest, Special Agents Kevin McGrath and Kyle Walton of the United States Bureau of Alcohol, Tobacco & Firearms met with Mr. Smith at the police station. Agent Walton read the defendant his constitutional rights, as set forth on ATF Form 3200.4.
 
 
 8
 Mr. Smith refused to sign a written waiver of his right to remain silent, but, according to the agents, he agreed to talk nonetheless. Mr. Smith allegedly told the agents that he had been trafficking in narcotics for approximately five months and that he was under indictment for a drug offense. He admitted that the arresting officers had found cocaine on his person and more cocaine and a firearm in his car, but denied previous knowledge of what was in his car.
 
 
 9
 In May of 1989 a federal grand jury handed up a three-count indictment charging Mr. Smith with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession of cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c); and (3) carrying a firearm during and in relation to a federal drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).
 
 
 10
 Mr. Smith moved to suppress the oral statement given to the special agents, but the motion was denied. The court found, after an evidentiary hearing, that the defendant had been adequately advised of his rights and that his statement had been made knowingly and voluntarily. The government subsequently introduced evidence of the statement at trial.
 
 
 11
 A jury found Mr. Smith guilty on all three counts of the indictment. This appeal followed.
 
 II
 
 12
 Mr. Smith argues that his statement to the federal agents should have been suppressed because the form followed by the agents in advising him of his rights failed to pass muster under Miranda v. Arizona, 384 U.S. 436 (1966). The challenged language came from ATF form 3200.4, which reads in pertinent part as follows:
 
 
 13
 "You must understand your rights before we ask you any questions; you have the right to remain silent; anything you say can be used against you in court, or other proceedings; you have the right to talk to a lawyer for advice before we question you and to have him with you during questioning; if you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions right now without a lawyer present, you will still have the right to stop the questioning at any time. You will also have the right to stop the questioning at any time until you talk to a lawyer."
 
 
 14
 Mr. Smith asserts that although this language apprised him of a right to counsel at some point, it did not make clear that he could have a lawyer appointed prior to any questioning. The words "if you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court," he contends, made it appear as though the right to counsel would not attach until court proceedings were instituted against him. In this connection Mr. Smith cites California v. Prysock, 453 U.S. 355, 360 (1981), where the Supreme Court suggested that Miranda warnings would not be sufficient "if the reference to the right to appointed counsel was linked [to a] future point in time after the police interrogation."
 
 
 15
 In the subsequent case of Duckworth v. Eagen, 492 U.S. 195, 204-05 (1989), however, the Supreme Court sanctioned a formulation in which the defendant was told that an attorney would be appointed for him "if and when you go to court." This phrasing did not conflict with Miranda, the Court held, because the defendant was informed that he had a right to an attorney before and during testimony and that a lawyer would be appointed for him if he could not afford one. Id. at 204. The warnings given in the instant case clearly satisfy Duckworth. Mr. Smith was expressly told, moreover, "you have the right to talk to a lawyer for advice before we question you and to have him with you during questioning." (Emphasis supplied.)
 
 III
 
 16
 Mr. Smith makes several factual representations which, if accepted by the trial court, would have entitled him to suppression of the incriminating statement. The court resolved the factual questions against Mr. Smith, however, and we have no basis for concluding that the court erred in doing so. Credibility determinations made by a trial court should be accorded great deference on appeal because of the trial court's ability to observe the witness' demeanor. United States v. Dennis, 701 F.2d 595, 598 (6th Cir.1983).
 
 
 17
 Mr. Smith testified at the suppression hearing that he had asserted his right to counsel and requested an opportunity to call his attorney, but that the agents ignored his request. If this were true, it is clear that Mr. Smith's Fifth Amendment rights would have been violated by the subsequent questioning. Minnick v. Mississippi, 111 S.Ct. 486 (1990); Edwards v. Arizona, 451 U.S. 477 (1981). The agents testified that it was not true--and, as it was entitled to do, the trial court accepted the agents' testimony.
 
 
 18
 Mr. Smith told the agents that he didn't want to be a "snitch," and he now contends that this meant he did not want to talk at all. The officers interpreted Mr. Smith's comment as setting a ground rule for questioning: he would talk to them about his arrest, but would not become an informer. The trial court concluded that the agents' interpretation was correct, and we agree.
 
 
 19
 Mr. Smith notes that he refused to sign a written waiver of his right to remain silent, and he contends that he specifically informed the agents questioning him that he did not wish to speak to them. The trial court did not believe the latter contention, and credited the agents' testimony to the contrary. The mere lack of a written waiver is not dispositive. As the Supreme Court has noted, "[t]he question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." North Carolina v. Butler, 441 US. 369, 373 (1979); accord Moran v. Burbine, 475 U.S. 412, 422 (1986).
 
 IV
 
 20
 Mr. Smith contends that his confession would have been involuntary even if Miranda had been satisfied. This contention fails for lack of persuasive evidence that the officers exacted the statement by means of "coercive activity." See McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989), where we characterized such evidence as the "threshold" of the test for voluntariness.
 
 V
 
 21
 The trial court is said to have erred in admitting, over objection, evidence that Mr. Smith told the officers he had been dealing in drugs since approximately November of 1988. This evidence is claimed to have been more prejudicial than probative; if it had been excluded, Smith argues, the jury might have concluded that the relatively small amount of cocaine in his possession was intended only for his personal use.
 
 
 22
 The admission of "bad acts" evidence is governed by Federal Rule of Evidence 404(b):
 
 
 23
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 
 
 24
 Such evidence must serve a permissible purpose, to be admissible, and its probative value must outweigh its potential prejudicial effect. United States v. Robison, 904 F.2d 365, 368 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990). A district court has broad discretion in determining the admissibility of evidence under Rule 404(b), United States v. Rodriguez, 882 F.2d 1059, 1064 (6th Cir.1989), cert. denied, 110 S.Ct. 1144 (1990), and the district court's resolution of such questions is subject to reversal only for abuse of that discretion. Robison, 904 F.2d at 368; Rodriguez, 882 F.2d. at 1064.
 
 
 25
 Here the trial court instructed the jury that Mr. Smith's statement was to be used only in considering the issue of intent, a permissible purpose under Rule 404(b). In at least one factually similar case we have upheld a decision to admit evidence of prior drug sales where the evidence was offered to show that drugs in the defendant's possession were intended for sale rather than for personal use. Robison, 904 F.2d at 368. In the case at bar, as in Robison, the trial court gave an appropriate limiting instruction. Id. As in Robison, we find no abuse of discretion.
 
 VI
 
 26
 Although Mr. Smith argues that the trial court should have excluded the evidence of what was seized during the inventory search of his car, he neither raised this issue in a motion to suppress nor objected when the evidence was offered at trial. We are without jurisdiction to hear a suppression issue raised for the first time on appeal. United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990); United States v. Oldfield, 859 F.2d 392, 396 (6th Cir.1988); United States v. Sachs, 801 F.2d 839, 847 (6th Cir.1986). We need not decide whether the inventory search in question was lawful, therefore, but we note that Mr. Smith would have had an uphill battle proving it was not. See New York v. Belton, 453 U.S. 454, 460 (1981); United States v. White, 871 F.2d 41, 44 (6th Cir.1989).
 
 VII
 
 27
 A Cleveland police detective called to testify at trial was allowed to express the opinion that the amount of cocaine found in Mr. Smith's car was inconsistent with personal use. The detective further opined that Mr. Smith's electronic pager and the loaded gun found under the seat of his car were indicative of drug-dealing. In allowing this testimony, Mr. Smith contends, the district court improperly allowed the witness to express an opinion regarding the defendant's mental state.
 
 
 28
 Federal Rule of Evidence 702 allows the admission of opinion testimony by an expert if the testimony will assist the trier of fact to understand the evidence or determine a fact in issue. We have held that police officers may testify as to the methods and techniques employed in particular crimes. United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991). There is ample evidence in the record that the Cleveland detective had enough knowledge, experience, and training to qualify as an expert on the matters about which he testified.
 
 
 29
 We have also held that "[a]dmission of expert testimony is a matter within the broad discretion of the court, and a decision to admit such testimony is to be sustained unless manifestly erroneous" or an abuse of discretion. Id.; see also United States v. Vance, 871 F.2d 572, 577 (6th Cir.1989), cert. denied, 110 S.Ct. 323 (1989); Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.), cert. denied, 484 U.S. 820 (1987). The decision to allow the officer's testimony was neither manifestly erroneous nor an abuse of discretion.
 
 VIII
 
 30
 Finally, Mr. Smith argues that the trial court erred in failing to grant an acquittal on the charge of carrying a firearm during and in relation to a drug trafficking crime. The relevant statute is 18 U.S.C. 924(c)(1), which provides as follows:
 
 
 31
 "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such a crime, be sentenced to imprisonment for five years...."
 
 
 32
 We have stated that "the terms 'used' and 'carries' in § 924(c)(1) should be construed 'broadly.' " United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990), citing United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989). As far as the first element of § 924(c)(1) is concerned, the fact that the gun was found under the seat of Mr. Smith's car does not mean that Smith did not "carry" it within the meaning of § 924(c)(1). See United States v. McDonald, 933 F.2d 1519, 1526 (10th Cir.1991) (loaded pistol under defendant's seat constitutes constructive possession).
 
 
 33
 As to the second element of § 924(c)(1), we noted in Brown, 915 F.2d at 224-25, that
 
 
 34
 "[h]owever broadly it may be construed, section 924(c)(1) will not support conviction for mere possession of a firearm during the course of criminal conduct. See United States v. Lyman, 892 F.2d 751, 753 (8th Cir.1989); United States v. Theodoropoulos, 866 F.2d 587, 597 (3d Cir.1989); [United States v.] Stewart, 779 F.2d at 540 [9th Cir.1985]. Rather, 'under the current version of § 924(c), the government is shouldered with the burden of establishing some relationship between the firearm [the defendant] possessed and the predicate drug trafficking offense.' " Brown, 915 F.2d at 224, quoting United States v. Wilson, 884 F.2d 174, 177 (5th Cir.1989).
 
 
 35
 The evidence in the case at bar was quite sufficient, in our view, to support the conclusion that there was "some relationship" between Mr. Smith's drug trafficking, which involved the transportation of the cocaine in his car, and the presence of the loaded, cocked pistol at a place where the driver could reach it without even leaving his seat. The jury was clearly entitled to find that Mr. Smith had the gun there to protect himself in his business.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation