73 F.3d 362
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Al FORD, Defendant-Appellant.
 No. 94-6223.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1996.
 
 Before: JONES and DAUGHTREY, Circuit Judges, and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Al Ford appeals his jury conviction and sentence for possession with intent to distribute cocaine. We affirm.
 
 I.
 
 2
 On January 19, 1994, Ford purchased a one way airline ticket from Los Angeles to Cincinnati via Dallas/Ft. Worth. Ford made his reservation one and one half hours prior to the flight's departure and purchased his ticket with cash. A narcotics interdiction officer in the Dallas airport learned of Ford's "suspicious" ticket purchase and followed Ford to a telephone in the Dallas airport. After eavesdropping on what the officer construed to be a drug related telephone conversation, the officer approached Ford and asked to search his person. Ford initially consented, but changed his mind after the officer attempted to search his waist area. During this encounter Ford became irate and abusive and terminated the search when he refused to allow the officer to search his carry-on luggage.
 
 
 3
 The Dallas officer ran a background check on Ford and learned he was previously convicted of trafficking in cocaine. The Dallas officer phoned Kentucky narcotics interdiction officers to warn them of Ford's arrival.
 
 
 4
 When Ford deplaned in the Greater Cincinnati/Northern Kentucky International Airport, the officers approached Ford and informed him that they knew of his encounter in the Dallas airport. Ford promptly threw his bags to the floor and yelled: "You want to search me, you want to search my bag, go ahead and do it, if you will make it fast; I have people waiting on me." J.A. at 44-45. The officers asked Ford if he would like to go to private room, and he said: "No. You want to search me, no, you go ahead and do it, but do it right here." J.A. at 45. The officers began a search Ford's luggage and his person. During the search, Ford yelled, swore, and refused to calm down at the officers' request. At one point during the search of his person, Ford shouted to the officers "what are you doing?" They responded that he gave his permission to be searched and that they were searching him. The officers found an unmarked vial containing pills, which Ford identified as prescription medication, and a copy of a Federal Express airbill. The airbill identified a package that had been shipped from Compton, California to Cincinnati, Ohio.
 
 
 5
 Ford continued to yell at the officers and complain about the search. After Ford ignored the requests to calm down, a uniformed officer approached and warned Ford he could be arrested for disorderly conduct. Ford again yelled profanities at the officers and subsequently was arrested for disorderly conduct and possession of unidentified prescription medication.
 
 
 6
 After Ford was taken to the airport police station, officers boarded the plane on which Ford had arrived and searched the area near Ford's seat. The officers found torn pieces of paper discarded in a paper bag. The officers were able to piece together numbers and bits of words matching the information on the Federal Express airbill.
 
 
 7
 The officers retrieved the Federal Express receipt from Ford and used it to trace the package. Ford denied any connection to the package and claimed a woman, whom he had briefly met at a swap meet, gave him the paper to write down her telephone number. When the package arrived at the Cincinnati airport, it was confiscated and placed near other packages for a drug detection dog to sniff. The dog reacted to the package, and the officers obtained a federal search warrant. The warrant was executed, and the officers recovered 480 grams of cocaine.
 
 
 8
 A federal grand jury returned a one-count indictment against Ford charging him with possession with the intent to distribute 480 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Ford filed a motion to suppress the Federal Express airbill obtained from him by the agents at the airport on the ground that the evidence was obtained as the result of an unlawful stop and search. The district court denied the motion. Ford was convicted in a jury trial and sentenced. This appeal followed.
 
 II.
 
 9
 The district court concluded that Ford's statements to the officers in the Cincinnati airport constituted consent to the search of both his person and his luggage. Ford alleges, to the contrary, that he did not voluntarily consent to the search, but rather was coerced by the circumstances surrounding his second airport stop.
 
 
 10
 Whether a person voluntarily consents to a search is a matter of fact to be determined from the totality of the circumstances. United States v. Taylor, 956 F.2d 572, 577 (6th Cir.1992) (en banc ). "Proof of voluntary consent must be 'by clear and positive testimony and the consent must be proven to have been 'unequivocal, specific, intelligently given, and uncontaminated by any duress or coercion.' " Id. ( quoting United States v. Williams, 754 F.2d 672, 675 (6th Cir.1985)). A district court's findings with respect to voluntariness are matters of fact that we review for clear error. United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988). Clear error rarely occurs in the context of airport police-civilian encounters because resolution of fourth amendment issues turns largely on credibility determinations made by the district judge. Taylor, 956 F.2d at 576.
 
 
 11
 Analyzing Ford's consent under the totality of the circumstances, we conclude his consent was neither coerced nor tainted by the officers' actions. Before the officers asked his permission to search his person or luggage, Ford threw down his bags and told the officers they could search him. Ford yelled, complained, and swore at the officers during the search, but he never asked them to stop the search. Ford's recent encounter with the officer in Dallas demonstrates his awareness that he could end the search. Just a few hours before the Cincinnati search, Ford successfully halted a search of his person in Dallas.
 
 
 12
 Furthermore, the encounter at the Cincinnati Airport was brief, lasting only about six minutes before Ford was finally arrested. There were only a few officers present, none displayed weapons, and the encounter took place in public on the airport concourse. The district court's findings that Ford's actions did not taint his verbal consent are supported and not clearly erroneous. See United States v. Crowder, 62 F.3d 782, 785-86 (6th Cir.1995) (listing factors to be considered in analyzing the totality of circumstances surrounding voluntariness of consent).
 
 
 13
 We are not persuaded by Ford's claims that the officers' persistence in approaching him in Cincinnati after his prior withdrawal of consent in Dallas led him to believe he was not free to leave the airport or to refuse the search. Nor are we convinced by his assertions that his consent was nothing more than a display of his frustration. As Ford points out, in certain situations when a suspect is stopped successively, the nature of the repeated stops may rise to the level of coercion. See United States v. Illazi, 730 F.2d 1120, 1126-27 (8th Cir.1984); United States v. Morin, 665 F.2d 765 (5th Cir.1982). Nevertheless, unlike the circumstances in Morin and Illazi, the stops in Ford's case did not create a situation in which Ford would have perceived that he was not free to leave or withhold consent. As mentioned above, Ford knew from experience in Dallas that he could stop a consensual search by withdrawing his permission. He did not do so in this instance, and we will not read his actions as a substitute for a verbal withdrawal of consent.
 
 III.
 
 14
 Second, Ford appeals the admission of his prior conviction for cocaine possession and alleged possession and forfeiture of $20,000 in connection with the possession offense. We engage in a three-part inquiry when reviewing a district court's decision to admit evidence of prior bad acts under Federal Rule of Civil Procedure 404(b): (1) we review the district court's determination that the prior bad acts occurred for clear error; (2) we review de novo whether the prior acts are admissible for a permissible purpose under Rule 404(b); and (3) we consider whether the district court abused its discretion in concluding the evidence's probative value was not outweighed by its prejudicial value under Federal Rule of Evidence 403. United States v. Wright, 16 F.3d 1429, 1442 (6th Cir.1994).
 
 
 15
 Under the first prong, Ford argues that admission of this evidence was clear error because allegations of his possession and forfeiture of $20,000 in connection with his drug offense have never been proved. A police officer testified for the government that Ford admitted the money was his when it was discovered. Ford claims he only confessed to possessing the cocaine. When presented with two opposing, yet permissible views of the evidence, we cannot consider a factfinder's choice between them clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 16
 Second, we find that the district court admitted the evidence for the permissible purpose of showing intent or plan. See United States v. Johnson, 27 F.3d 1186, 1190 (6th Cir.1994), cert. denied, 115 S.Ct. 910 (1995). Ford's possession of a marketable quantity of cocaine bundled up with a large sum of cash and his prior guilty plea on trafficking charges are probative of whether Ford engaged in such prior drug transactions and are therefore probative of his intent with respect to the cocaine in the current case. See United States v. Robison, 904 F.2d 365, 368 (6th Cir.) (evidence of previous narcotic deals suggests that defendant did not intend merely to use drugs), cert. denied, 498 U.S. 946, (1990); United States v. Rodriguez, 882 F.2d 1059, 1064-65 (6th Cir.1989) (evidence of previous drug transaction relevant to show intent, plan, and knowledge of defendant's later criminal activity), cert. denied, 493 U.S. 1084 (1990).
 
 
 17
 Ford contends that the prior trafficking conviction could not prove intent or plan in the absence of a showing of a similarity in plan or scheme between that offense and his present offense. "Evidence is relevant to prove 'plan' if its purpose 'is to establish the doing of a criminal act as a step toward completing a larger criminal plan.' " United States v. Wright, 16 F.3d 1429, 1442 (6th Cir.1994) (quoting United States v. Fountain, 2 F.3d 656, 667 (6th Cir.), cert. denied, 114 S.Ct. 608 (1993)). The admission of prior Cincinnati drug trafficking is relevant to Ford's larger criminal plan to transport cocaine from Compton or other out of state locations and sell it Cincinnati. The incidents were separated by four years, but were near enough in time to qualify as a larger criminal plan. The conduct msut only be reasonably near in time under the facts of the particular case. See United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985).
 
 
 18
 Finally, we conclude that the district court did not abuse its discretion in weighing the probative value of the prior act evidence against its prejudicial impact under Federal Rule of Evidence 403. To minimize the risk of undue prejudice, the court instructed the jury that it could consider the prior act evidence only in deciding whether Ford possessed the requisite intent or state of mind to distribute the drugs. J.A. at 194. The court reminded the jury it could only convict Ford if the government proved beyond a reasonable doubt that Ford committed the crime charged in the present case. J.A. at 195.
 
 
 19
 Under our three part test for reviewing the admission of prior act evidence under Rule 404(b), we affirm the district court's admission of the evidence in this case.
 
 IV.
 
 20
 Ford also appeals his conviction on the ground of insufficiency of the evidence. Ford failed to move for an acquittal under Federal Rule Criminal Procedure 29; therefore, this court will review his insufficiency of the evidence claim only for manifest injustice. United States v. Morrow, 977 F.2d 222, 230 (6th Cir.1992) (en banc ), cert. denied, 113 S.Ct. 2969 (1993). The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 21
 Ford was charged with possession with the intent to distribute approximately 480 grams of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). The elements of the offense that the government must prove are: "(1) knowing; (2) possession of a controlled substance; (3) with the intent to distribute it." United States v. Christian, 786 F.2d 203, 210 (6th Cir.1986). We have satisfied ourselves through our review of the record that the government presented sufficient evidence to satisfy every element of the offense charged. In such a circumstance, a manifest injustice does not occur.
 
 V.
 
 22
 Alternatively, Ford contends that the failure of his trial counsel to move for an acquittal represents ineffective assistance of counsel. Ford acknowledges that as a general rule, an ineffective assistance of counsel claim may not be raised for the first time on direct appeal. See United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (citing United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982). Nevertheless, this circuit may review such a claim if the record is adequate to assess the merits of Defendant's allegations. Wunder, 919 F.2d at 37. We do not find the record sufficient in this case and accordingly decline to address Ford's claim.
 
 VI.
 
 23
 Finally, we dispose of Ford's challenge to the "jurisdiction" of the District Court for the Eastern District of Kentucky because, as he claims, the offense was committed in Ohio. The United States District courts have jurisdiction over violations of the criminal laws of the United States, 18 U.S.C. Sec. 3231, and Ford's claim is frivolous. Furthermore, construing this as a challenge to venue is of no aid to Ford, since venue lies in any district in which part of a continuing offense occurred. See 18 U.S.C. Sec. 3237(a).
 
 VII.
 
 24
 The district did not err in any respect alleged by Ford. Therefore, we AFFIRM Ford's conviction and sentence.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation