UNITED STATES of America,
Plaintiff–Appellee,

v.

Roy G. NEWMAN, Defendant–Appellant.

No. 98–2433.

United States Court of Appeals,
Sixth Circuit.

April 4, 2001.

---

Before BATCHELDER and COLE,

Circuit Judges; GRAHAM *, District Judge.

## PER CURIAM.

The Appellant, Roy G. Newman, seeks review of his sentence after his conviction on two counts of possession of a firearm under disability. The questions presented are whether the district court erred by not creating a separate record regarding Newman's claimed defense of entrapment by estoppel, and whether the district court properly considered the nature of Newman's prior offenses in sentencing. Finding no plain error, we affirm the judgment of the district court.

## I.

Defendant Roy G. Newman was arrested on November 13, 1996, by Michigan DNR officers for "shining deer." [1] The officers recovered a weapon that they had observed Newman throw from his truck. Newman was indicted on the charge of possession of a firearm under disability, pursuant to 18 U.S.C. § 922(g)(1). While free on bond, Newman was again arrested by Michigan DNR officials for "shining deer" while in possession of a firearm. He was charged in a superceding indictment with an additional count of violating § 922(g)(1), with an enhancement under 18 U.S.C. § 1347 for committing a crime while on federal bond.

Newman entered into a Rule 11(e)(1)(c) plea agreement which provided that the sentence would not exceed the middle of whatever guideline range the court found was applicable. During the plea colloquy, Newman claimed that he had been entrapped because "every police agency in the state of Michigan at one time or anoth-

er in the last 30 years gave me these guns." He further claimed that the law enforcement officers involved knew he was a convicted felon. Newman did not claim that any federal officers were involved in giving or returning firearms to him.

The district court acknowledged that Newman was suggesting a defense of entrapment and informed him of his right to present such evidence at trial. However, he cautioned the defendant that the alleged actions of state officers were not relevant in Newman's federal prosecution. When Newman exhibited confusion at the state-federal distinction, Judge Cleland repeated his explanation. As the conversation continued, Newman insisted that "the police officers, the state, county DNR, every level there has [sic] given me guns."

Judge Cleland again asked whether Newman understood his right to go to trial. Newman conferred with his attorney who told the court that he had discussed the potential risks and benefits of raising an entrapment defense with his client. Following further discussion on other aspects of the plea, both attorneys stated that they were satisfied with the Rule 11 colloquy. The defendant entered pleas of "guilty" on both counts.

After reviewing the defendant's record, the court rejected the sentence cap component of the Rule 11 agreement, and permitted the defendant to withdraw his guilty pleas. The court recited an abbreviated history of the defendant's prior encounters with the law and concluded that the sentence cap did "not in any way appear to [the court] to be proportionate to the crime of conviction against the criminal background of this offender." The court

---

* The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation.

1. "Shining deer" involves the use of an artificial light for hunting purposes and is prohibited by Mich. Comp. Laws § 324.40113.

added, "[t]his is just an egregious criminal history."

In preparation for trial, the court held a final status conference. At that conference, Newman again raised the issue of entrapment by state law enforcement officers. Again, the court stated that the actions of state officials were not relevant in a federal prosecution. The government moved in limine to exclude, on relevance grounds, any claim of entrapment by estoppel. Defense counsel stipulated to the motion.

At trial, the defense did not call any witnesses but proffered testimony from Newman that he had had firearms given or returned to him by state law enforcement officers. In the interest of saving time, defense counsel indicated that he would offer the transcript of the prior colloquy as the proffer. The government objected to the proposed testimony as irrelevant, and the judge sustained the objection. The jury found Newman guilty on both counts.

At the sentencing, the court took up the government's objections to the scoring of the presentence report, sustaining one objection which resulted in the increase of Newman's Criminal History Category by one level (the change moved Newman from level IV to level V on the criminal history rubric). In sentencing Newman, the court departed upward one additional level (from level V to VI), citing his voluminous criminal record and likely recidivism. The judge commented: "I have seen hundreds and hundreds of individuals before me for sentencing, I do not think that I have ever seen a lengthier criminal history than this one."

The court continued: "Does Mr. Newman's history tell me that his criminal behavior is likely to be repeated? It does. I am convinced that Mr. Newman has no respect for the law, that he'll do whatever he wants to do, he will—he has already proven himself to be a recidivist. He pays almost no attention to the obligations imposed on him by a court." The court sentenced the defendant to six years in prison, plus three years' supervised release and fined him $2,000.

Newman appealed his sentence, alleging that the trial judge erred by refusing to create a "separate record" on the issue of entrapment by estoppel that might have weighed on the issue of mitigation; and that the trial judge did not consider the nature of all aspects of the defendant's prior offenses when departing from the sentencing guidelines.

## II.

A defendant who does not object to an error at sentencing forfeits his or her right to assert the issue on appeal. *See United States v. Tosca,* 18 F.3d 1352 (6th Cir.1994). When an issue has been forfeited, we review the prior proceedings merely for "plain error." *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), FED R. CRIM. P. 52(b).

The gist of Newman's claim is that by failing to create a separate record regarding his proposed defense of entrapment by estoppel, the court precluded defendant from using that evidence to argue for mitigation at his sentencing hearing. The defendant believes that if this evidence had been available, it would "mitigate the seriousness of the criminal history ... and offset the 'shock' of the trial judge." App. Br. 9.

The doctrine of "entrapment by estoppel" prohibits the government from prosecuting a defendant when the defendant reasonably relied on the representation of a government official that the defendant's conduct was legal. *Raley v.*

*Ohio,* 360 U.S. 423, 437–38, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); *United States v. Lowenstein,* 108 F.3d 80 (6th Cir.1997). We have held that this defense may not be invoked to shield a defendant from federal prosecution when the representations of legality came from state officers. *United States v. Hurst,* 951 F.2d 1490, 1499 (6th Cir.1991).

In reviewing the record, we find that Newman's failure to object at the sentencing hearing undermines his argument that the court should have created a "separate record." The following exchange, which occurred immediately following the court's decision to depart upward illustrates the defendant's acquiescence:

THE COURT: "Mr. Rhead [defense counsel], will you come up to the lectern with your client, please. Say what you have to say and then let's proceed."

MR. RHEAD: "Yes, your Honor."

THE COURT: "Mr. Rhead you can speak on behalf of your client then I'll call on him and Miss Parker, then we'll conclude."

MR. RHEAD: "I have nothing to say on behalf of Mr. Newman, your Honor." (Emphasis added).

THE COURT: "You have consulted with him about your ability to speak, I trust?"

MR. RHEAD: "I did your Honor."

THE COURT: "On his behalf? It would be at his request that you do not have anything to present?"

MR. RHEAD: "He had things for me to say, your Honor, but in my professional opinion they were not appropriate for me to say at this time."

THE COURT: "So you have given it careful consideration, it's your judgment nothing along those lines should be said?"

MR. RHEAD: "There's nothing on behalf of Mr. Newman I could say here today that would cause the court to do anything different, your Honor."

THE COURT: "I understand. I want to make sure there's been thought about this and you had a good conversation with him ..."

MR. RHEAD: "We had a good conversation, your Honor."

\* \* \* \* \* \*

THE COURT: "Mr. Newman, you have the right to speak on the record if you wish before I impose sentence as well. You have the right to tell me anything you want in open court that relates to sentencing. You don't have to if you don't want to, I will allow you your opportunity right now though. I will listen to whatever you may wish to tell me."

RESPONDENT: "No, sir, you had your mind made up way before I came into this court, so I have nothing to say." J.A. 204–206. (Emphasis added.)

Newman cites no case law supporting the proposition that the district court is required to create a separate record on issues not raised during sentencing. The court gave ample opportunity to both the defendant and defendant's counsel to object to any procedural error or failure to consider evidence. They did not object. Nor did the defendant seek to introduce any evidence that might mitigate his sentence. Accordingly, we find that Newman has failed to demonstrate plain error.

■ Even assuming arguendo that the law required the trial court to make a record of Newman's proposed defense, a cursory examination of the transcripts shows that the court allowed defendant to expound on his entrapment by estoppel theory on several occasions. Discussion of the entrapment by estoppel defense ap-

pears frequently in the transcripts of the Rule 11 colloquy, and during the proffer at trial. At trial, defense counsel asked that the transcript of the plea hearing be used in lieu of the defendant's testimony. The court offered counsel the opportunity to enlarge upon that record saying: "I don't want to browbeat anybody, however. If you want to present these things and if you want the opportunity to cross examine, we can take that time." Both counsel agreed to rely on the transcript from the Rule 11 hearing.

Further, the district court provided Newman an opportunity to explain, in detail, his theory of entrapment at the Rule 11 hearing. The court asked Newman if he could name specific instances of law enforcement officers returning firearms to him. He could not.

The frequent discussion of the entrapment by estoppel defense renders ridiculous Newman's ultimate contention that had the judge been aware of these alleged facts, he would have taken them into account in mitigation. The record shows that the judge was well-informed regarding Newman's entrapment claims at the time of sentencing.

### III.

■ Newman's second assignment of error is that the district court failed to consider properly the nature of his prior offenses in sentencing. In reviewing departure decisions, we defer to the trier of fact's "superior feel" for the case. *United States v. Little*, 61 F.3d 450, 453 (6th Cir. 1995). *quoting United States v. Thomas*, 24 F.3d 829, 883 (6th Cir.), *cert denied*, 513 U.S. 976, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). However, we premise such deference on the district court's articulation of "the specific reasons for its departure in language relating to the Guidelines ...."

*United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989).

A trial court may consider departing upward from the otherwise applicable guideline range if "reliable information indicates that the criminal history does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes ..." USSG § 4A1.3. Relevant factors in making such a determination include:

(a) prior sentence(s) not used in computing the criminal history category;

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

\*　　\*　　\*　　\*　　\*　　\*

(e) prior similar adult criminal conduct not resulting in a criminal conviction. Id.

In addition to the factors to be considered pursuant to the Sentencing Guidelines, Congress has established at 18 U.S.C. § 3553(c)(2) a mandatory procedure to be followed when the sentencing court departs upwards. The statute provides:

The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and if the sentence ...

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described.

18 U.S.C. § 3553(c)(2).

■ We have held that this statute requires a "reasoned statement from the bench," which identifies the reasons for departure and relates them to the Guidelines. *Rodriguez*, 882 F.2d at 1066. Further, the sentencing court "must first look to the next higher criminal history catego-

ry before otherwise departing from the guidelines." *United States v. Kennedy,* 893 F.2d 825, 829 (6th Cir.1990).

■ We find that the district court followed these procedures to the letter. At the sentencing, the court stated: "I intend to depart upward, at least to be guided by a Roman Numeral VI category. There are a number of reasons for that, but I want to recite appropriately the guideline text in making this decision." The court then quoted from the USSG Policy Statement, § 4A1.3. The court reviewed the volume of Newman's convictions and arrests; compared Newman's history with that of other offenders; making specific reference to the guidelines the court found that "[a] Roman Numeral V in no way represents any reasonable reflection of the likelihood ... that this defendant will commit further crimes." After another recitation of Newman's prior convictions, the court found the defendant was a "committed recidivist and this court is, therefore, authorized, and so orders, under the provisions of § 4A1.3 that I will be guided by an offense level as calculated, but by a criminal history category Roman Numeral VI in providing a sentence for the defendant." Finally, the court departed upward only to the next higher criminal history category as required by the 6th Circuit's holding in *Kennedy.*

As with the first assignment of error, the record belies defendant's contention that the sentencing judge failed to consider the nature of the prior offenses in departing upward. In fact, the record indicates that the court gave great consideration to the defendant's record, noting at the sentencing, "I have seen hundreds and hundreds of individuals before me for sentencing. I do not think that I have ever seen a lengthier criminal history than this one. And a lot of it is related to firearms, and most of that appears to be related to poaching, illegally taking game." He also stated that, "a Roman Numeral V category for this individual's actual criminal history not only underrepresents significantly, it almost completely underrepresents the seriousness of Mr. Newman's history."

Defense counsel argues that many of the prior convictions occurred for relatively minor infractions, and that the court fails to take into account the variations in the seriousness of Newman's criminal history. To the contrary, the record indicates that the district court was cognizant of the nature, variations, and volume of defendant's prior offenses. Although in his 40–year criminal history, Newman did not graduate to more serious crimes, neither did he mend his ways. The district court appeared astounded by the consistency of Newman's record, observing, "He began early and was very persistent in his pursuit of illegal means to comport himself."

■ Newman also takes issue with the court's reliance on prior arrests and nolle prosequi charges in sentencing. The sentencing guidelines specifically allow the consideration of prior similar adult criminal conduct not resulting in a criminal conviction, so long as that conduct is not the sole factor relied upon in departing upwards. *See United States v. Williams,* 503 U.S. 193, 197, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); USSG, § 4A1.3.

Reviewing the record, we find no two facts support any claim that the district court relied solely on prior arrests to support the upward departure. The district court frequently recognized Newman's voluminous conviction record as well as his non-conviction encounters with the justice system. Moreover, the prior arrests fit Mr. Newman's well-established pattern of disregarding hunting and firearms laws, making them highly relevant to his most recent offenses.

## CONCLUSION

For the foregoing reasons, the order of the district court is affirmed.