**UNITED STATES of America, Appellee,**

v.

**James Dean DOWNS, Defendant–
Appellant.**

**No. 91–5504.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 8, 1991.

Decided Jan. 30, 1992.

Rosemary Hart, Asst. U.S. Atty. (argued), and William Cohen, Asst. U.S. Atty., and Deborah Phillips, Asst. U.S. Atty. (briefed), Nashville, Tenn., for government.

Deborah S. Swettenam, Asst. Fed. Public Defender (argued), Nashville, Tenn., for James Dean Downs.

Before BOGGS and NORRIS, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

TIMBERS, Senior Circuit Judge.

Appellant James Dean Downs, an inmate at the Nashville Metropolitan Jail, appeals from a judgment of conviction entered April 8, 1991, in the Middle District of Tennessee, John T. Nixon, *District Judge*, upon a plea of guilty to one count of credit card fraud, in violation of 18 U.S.C. § 1029(a)(2) (1988), and one count of knowingly and intentionally unlawfully possessing with intent to distribute a controlled substance, namely Dilaudid, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). His appeal brings up for review his sentence of 120 months incarceration, followed by a 6-year term of supervised release. The propriety of his sentence is the sole issue on appeal.

Downs contends, essentially, that the district court erred (1) in failing to reduce his offense level by two levels under the Sentencing Guidelines to reflect his acceptance of responsibility; and (2) in imposing an upward departure of 74 months under the Guidelines without adequately stating the grounds for the departure.

For the reasons that follow, we affirm the district court's refusal to reduce appellant's offense level for acceptance of responsibility, but we remand the case to the district court for specific findings to justify the upward departure.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues on appeal.

On May 21, 1990, Brian Canter, a former fellow inmate of Downs, informed federal officials that Downs had contacted him to request the use of Canter's phone in order to place orders for merchandise. The phone was equipped with three-way calling capabilities. With Canter's consent, federal officials recorded phone conversations between Canter and Downs. During a recorded conversation that took place on May 30, 1990, Downs contacted the Target department store located on White Bridge Road, Nashville. Posing as an employee of the store's credit department, Downs obtained a credit card number from a store clerk. He used this same ruse to obtain two additional credit card numbers on May 31, 1990 by placing calls to Target and a K–Mart department store, located on Gallatin Road, Nashville. Downs then used the credit card number obtained from K–Mart to purchase by mail a lap top computer, valued at $1,335, and a camera, valued at $510. This conduct was the basis of the count charging Downs with credit card fraud.

The conduct underlying the count charging Downs with knowing and intentional unlawful possession with intent to distribute a controlled substance, Dilaudid, is somewhat more complicated. Downs devised the following plan to obtain Dilaudid after he learned that Canter's parents were ill and were taking Dilaudid.

On June 12, 1990, Canter informed Downs that Canter's parents had just filled a prescription for Dilaudid at a local pharmacy. Downs then called Dr. John Haynesworth, a physician working with federal authorities, and posed as a Dr. Richards from the Phar–Mor Pharmacy on Gallatin Road, Nashville. Downs stated that his assistant had just attempted to fill the prescription for Dilaudid, but the pharmacy had only six of the needed one hundred pills in stock. Downs then told Dr. Haynesworth that, due to the shortage of pills, he had voided the initial prescription. Downs requested that Dr. Haynesworth issue a new prescription for the remaining ninety-four pills. Dr. Haynesworth consented and issued a second prescription for Dilaudid.

Downs instructed Canter to pick up the replacement prescription and deliver it to Charles Grimes, a jailer at the Criminal Justice Center, who was then working at his off-duty job. The Dilaudid, which was supplied by law enforcement officers, was delivered to Grimes who was arrested immediately. In a post-arrest statement, Grimes stated that he was acting at Downs' direction and that he previously

had smuggled money and merchandise to Downs inside the prison.

At sentencing, the district court considered Downs' lengthy criminal history of drug trafficking and credit card fraud. His criminal history dates back to 1982 when he was convicted of obtaining property by false pretenses. In 1985 he was convicted of two counts of selling a controlled substance and one count of simple possession. Although Downs was paroled on this conviction in 1986, his illegal activities continued. In 1987 he was convicted on two counts of attempting to obtain a controlled substance by forgery, but in 1988 he was paroled a second time. He subsequently was convicted for the fraudulent use of a credit card in 1989, and for theft of property in 1990.

Evidence of similar conduct that did not result in criminal convictions also was presented at Downs' sentencing on April 8, 1991 on the instant offenses. Secret Service Agent Bobby J. Garret testified that Downs admitted to having impersonated a credit card company representative in order to obtain credit card numbers from local merchants. He also admitted having used those credit card numbers to place unauthorized telephone orders for merchandise. He further admitted that he had "placed so many phone orders and had obtained so many [credit card] numbers that he could not separate one from the other."

Beverly Collins, an agent with the Tennessee Bureau of Investigation, testified that Downs fraudulently obtained Dilaudid on several occasions in a scheme similar to that which, in part, is the basis for his conviction in the present case. Downs would impersonate a doctor in order to obtain information on terminally ill cancer patients. Later, he would contact those patients individually to determine the particular medication that they were taking. He would call the patient's pharmacy and change their regular prescriptions to Dilaudid. A runner, acting as a relative or friend of the patient, would pick up the Dilaudid for Downs. As a result of this scheme, at least two of the cancer patients received the wrong medication and had to be hospitalized.

James T. Greer, a member of the Internal Affairs Division in Metro Nashville, testified that Downs continued to break the law while incarcerated. Greer testified that various unnamed confidential informants stated that Downs continued his credit card fraud scheme during his imprisonment. Greer also referred to the jail file maintained on Downs during his incarceration. That file included a disciplinary write-up detailing an altercation between Downs and another inmate. At least six other similar reports detailed less serious altercations, including the confiscation by prison officials of a new pair of tennis shoes, believed to have been obtained by means of one of Downs' fraudulent credit card schemes.

A probation officer concluded in his presentence report that Downs was a "career offender" as defined in U.S.S.G. § 4B1.1. The presentence report set forth a recommendation that Downs was not entitled to a two level downward adjustment based on acceptance of responsibility. U.S.S.G. § 3E1.1. Based on the resulting offense level of 34 (which included Downs' career offender status) and a criminal history category of VI, the probation officer recommended a sentence of 262–327 months incarceration under the Guidelines.

The probation officer also calculated what would be Downs' sentence absent the career offender adjustment. This calculation was based on an offense level of 14 and a criminal history category of VI. The applicable Guideline range would be 37 months to 46 months.

After conducting the sentencing hearing, the district court held that Downs was not entitled to a downward adjustment based on acceptance of responsibility "because it does appear to this Court that Mr. Downs is engaged in on-going criminal activity; that he is incorrigible." The district court disagreed with the report regarding Downs' career offender status. Even though Downs qualified as a career offender under a federal statute, 28 U.S.C. § 994(h) (1988), the court held that consoli-

dation of two related prior drug convictions precluded Downs from being classified as a career offender under the Guidelines. U.S.S.G. §§ 4B1.1, 4A1.2(a)(2).

Upon holding that Downs has "had a persistent involvement in drug-related criminal activity, both in and out of jail, and that his criminal history is not adequately reflected by the Guidelines", the court departed upward 74 months from the Guidelines and sentenced Downs to 120 months imprisonment, to be followed by a 6–year term of supervised release.

## II.

■ With these facts and prior proceedings in mind, we turn first to Downs' contention that the district court erred in refusing to reduce his offense level under the Guidelines because of his asserted acceptance of responsibility. Downs contends that because he pled guilty despite his belief that he had a colorable defense, the court erred in declining to reduce his offense level by two levels for acceptance of responsibility. He contends that the court erroneously relied on his past criminal conduct in reaching its decision. We disagree.

■ Under Guideline 3E1.1(a), a defendant is entitled to a reduction in offense level if he has "clearly demonstrat[ed] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The application notes under this provision provide that:

"Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with acceptance of responsibility."

U.S.S.G. § 3E1.1, applic. note 3. The mere fact that a defendant has pleaded guilty is not dispositive of the issue. "A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.

1990), *cert. denied*, 111 S.Ct. 713 (1991); U.S.S.G. § 3E1.1(c). Rather, a district court's findings will be given great deference in this matter and a challenge will be successful only in extraordinary circumstances. We previously have stated that:

"Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question ... enjoys the protection of the 'clearly erroneous' standard. Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area. Indeed, the guidelines specifically state that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.'" *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (citations omitted)).

The district judge in the instant case stated that "I am not going to give the defendant credit for acceptance of responsibility, because it does appear to this Court that Mr. Downs is engaged in on-going criminal activity; that he is incorrigible." We interpret this statement to mean that the court believed that Downs was not accepting responsibility as required for a downward departure under U.S.S.G. § 3E1.1(a), since he was continuing to engage in unlawful activities. Apparently for this reason the court ordered that Downs' use of the phone be supervised.

We decline to question the court's judgment in this matter. The denial of the two-level reduction in offense levels was not clearly erroneous.

## III.

■ We turn next to Downs' contention that the district court did not adequately

state its grounds for an upward departure from the Guidelines as required by 18 U.S.C. § 3553(c)(2) (1988). We agree.

Departure from the sentencing guidelines is permissible based upon "reliable information ... that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." U.S.S.G. § 4A1.3. Under § 3553(c)(2), however, a sentencing court must "state in open court" "the specific reason for the imposition of a sentence" outside of the Guideline range. In *United States v. Kennedy*, 893 F.2d 825, 827–28 (6th Cir.1990) (quoting *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1084 (1990)), we held that:

> "[w]here a district court chooses to depart, 'a short clear written statement or a reasoned statement from the bench' must support the departure. The court is not required to 'incant the specific language used in the guidelines,' but should 'identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure....' If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion."

■ The deference due to a district court's departure from the Guidelines "depends upon the district court's providing a reasoned statement of 'the specific reasons for its departure in language relating to the Guidelines.'" *Id.* at 827 (quoting *Rodriguez, supra,* 882 F.2d at 1066). Furthermore, in *United States v. Fitzwater*, 896 F.2d 1009, 1011 (6th Cir.1990) (quoting *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989)), we stated: "The requirement of a specific statement is not satisfied 'by a general recitation that the defendant's criminal history category or offense level underrepresents, in the sentencing court's opinion, the defendant's criminal record or the seriousness of the charged offense.'" The requirement of a specific

statement helps to assure uniformity in sentencing and to facilitate appellate review. *Kennedy, supra,* 893 F.2d at 828; *United States v. Cervantes*, 878 F.2d 50, 54 (2nd Cir.1989); 18 U.S.C. § 3553(a)(6) (1988).

We hold that the court's conclusory statements here are inadequate to facilitate an intelligent and informed review of its upward departure from the Guidelines. The court stated that Downs' "criminal history is not adequately reflected by the Guidelines", and that he "had persistent involvement in drug-related criminal activity, both in and out of jail." The government interprets this language to mean that the court found that the Guidelines did not adequately account for Downs' criminal history, and that "[i]n light of the entire sentencing hearing, the judge's brief statement of why it was necessary to depart upward from the Guidelines is sufficient to provide all the reasoned analysis required to support an upward departure."

In *Kennedy, supra,* 893 F.2d at 828, however, we held that the district court's conclusory comments similar to the ones given in the instant case were inadequate. The district court in *Kennedy* attempted to justify the upward departure by asserting that the defendant "had a long history of violation of the law", and stated that the defendant's record was "extensive". *Id.* at 826. This attempted justification was held to be inadequate because the district court did not explain its departure in "language relating to the guidelines, nor connect[ing] the criminal record to the permissible grounds for departure." *Id.* at 828 (footnote omitted). We hold the court's explanation for departure in the instant case indistinguishable from that proffered by the district court in *Kennedy*.

■ Furthermore, the need for the district court to give a specific and reasoned explanation for its upward departure was heightened by the fact that the 120 month sentence was greatly outside of the parameters of the Guidelines. We have held that before making an upward departure from the Guidelines, a sentencing court must first consider the next higher criminal history category. *United States v. Feinman,*

**402**

930 F.2d 495, 501 (6th Cir.1991); *Kennedy, supra,* 893 F.2d at 829; U.S.S.G. § 4A1.3 ("the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable"). Moreover, the sentencing court must "state definitively that he or she has considered lesser adjustments of the criminal history category and must provide the reasons why such adjustments are inadequate." *Kennedy, supra,* 893 F.2d at 829 (quoting *United States v. Lopez,* 871 F.2d 513, 515 (5th Cir.1989)); *see also United States v. Lassiter,* 929 F.2d 267, 270 (6th Cir.1991) (Departures beyond the next higher criminal history category will be examined particularly closely.).

This same reasoning applies to departures beyond the criminal history category of VI, above which there are no higher criminal history offense levels for guidance. Since Downs' criminal history was sufficient to place him in criminal history category VI prior to the upward adjustment, the district court could not have looked to a higher criminal history category for direction. The need for a specific and reasoned explanation is particularly compelling in these circumstances. In reaching this conclusion, we express no views as to the propriety of the 74–month upward departure.

### IV.

To summarize:

We do not question the district court's finding that Downs had not accepted responsibility for his actions and accordingly was not entitled to a two level reduction in his offense level. The court, however, erred in not stating the specific reasons for departing upward from the Guidelines. Accordingly, the sentence is vacated, and the case is remanded to enable the district court to state specific reasons for departing from the Guidelines.

*Affirmed in part; reversed and remanded in part.*