985 F.2d 562
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Charles LANGH, Defendant-Appellant.
 No. 92-1240.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1993.
 
 Before DAVID A. NELSON and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal under the United States Sentencing Guidelines from a sentence for bank larceny. The defendant argues that the district court erred (1) in not reducing his offense level for acceptance of responsibility, (2) in taking his socioeconomic status into account, and (3) in departing upward from the sentence range prescribed by the guidelines. Finding no reversible error, we shall affirm the sentence.
 
 
 2
 * The defendant, David Charles Langh, worked as a messenger for Guardian Armored Security. The government charged that he and Anthony Minkeson, who was also an employee of Guardian, staged an accident in which the rear doors of a Guardian truck flew open while the truck was traveling on an expressway. Mr. Minkeson was said to have removed a bag of money beforehand. Langh and Minkeson subsequently claimed that the money, which belonged to First of America Bank, had fallen out of the truck in the "accident."
 
 
 3
 The following year, after Minkeson had left Guardian's employ, Messrs. Langh and Minkeson planned another theft. Mr. Langh was scheduled to work as a messenger in the back of an armored truck that was to stop at a National Bank of Detroit branch at Inkster, Michigan. He and Mr. Minkeson arranged that Minkeson would approach the back of the truck while Langh was working there and would take a bag of money and Langh's gun. Mr. Minkeson testified as follows at trial:
 
 
 4
 "As I got to the back of the truck, I picked up the gun and the bag of currency, and he turned around--Dave [Langh] turned around and put his hands up. As I got the bag and the currency, I just turned and trotted away, not in a running motion but just to trot away."
 
 
 5
 The driver of the armored truck, Clyde Kenniel, was unaware that the robbery of Langh was staged. Observing the activity through two small windows in the back of the truck's cab, he "hit the floor" and radioed for assistance. Asked if he was afraid for his safety at the time of the staged robbery, Mr. Kenniel testified that he was.
 
 
 6
 The last of the three episodes covered in the indictment occurred several months after the staged robbery. Mr. Langh allegedly supplied a security badge, a Guardian uniform, and a gun to Mr. Minkeson, who, equipped with these accoutrements, entered the Electronic Data Systems Employees Federal Credit Union and took $140,000 in cash.
 
 
 7
 An indictment was returned against Mr. Langh on August 23, 1991. Count One charged him with bank larceny in connection with the loss of the First of America Bank funds; Count Two charged him with bank robbery at the National Bank of Detroit. Count Three charged him with bank larceny at the Electronic Data Systems Employees Federal Credit Union.
 
 
 8
 On October 29, 1991, Mr. Langh appeared before the district court to plead guilty to all three counts. The court refused to accept the plea as to Count Two, the National Bank of Detroit robbery charge, because Mr. Langh's statements at the plea hearing did not indicate that any force, violence, or intimidation had been used in the course of the crime. The government withdrew from the plea agreement, and the case proceeded to trial.
 
 
 9
 The jury acquitted Mr. Langh on Count One. As to Count Two Mr. Langh was found guilty of the lesser included offense of bank larceny. The jury could not reach a verdict on count three, and a mistrial was declared as to that count.
 
 
 10
 The government subsequently gave notice that it intended to seek an upward departure under the sentencing guidelines because of the assaultive nature of the larceny offense of which Mr. Langh had been convicted, because of his use of a firearm, and because of the disparity between the guideline range for bank robbery (imprisonment for 151-188 months) and the guideline range for the larceny offense. The latter range was 37-46 months.
 
 
 11
 Mr. Langh was sentenced to imprisonment for 72 months, to be followed by a three-year term of supervised release. He was ordered to make restitution, jointly and severally with Mr. Minkeson, in the amount of $192,500.
 
 
 12
 The district judge concluded, based upon a preponderance of the evidence, that Mr. Langh had committed all three of the charged offenses. The judge said, however, that he was departing from the guideline range solely on the basis of the conduct that led to the conviction on Count Two.
 
 II
 
 13
 Under U.S.S.G. § 3E1.1(a) a defendant is entitled to a two-level decrease in his offense level if he "clearly demonstrates" acceptance of responsibility for his offense. In determining whether a defendant qualifies under § 3E1.1(a), a court may consider, among other things, whether he truthfully admitted the conduct comprising the offense(s) of conviction, and truthfully admitted (or did not falsely deny) any additional relevant conduct for which he is accountable under § 1B1.3. See U.S.S.G. § 3E1.1, Application Note 1(a). Ordinarily, this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt; see Application Note 2. Application Note 3, as in effect at the time of sentencing, said that
 
 
 14
 "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."
 
 
 15
 The mere fact that a defendant has pleaded guilty does not guarantee a reduction in offense level. See United States v. Downs, 955 F.2d 397, 400 (6th Cir.1992). A district court's findings on this matter are given great deference, and a challenge to such findings will be successful "only in extraordinary circumstances." Id. "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Application Note 4. The district court found that Mr. Langh engaged in such conduct when he made a false statement to the FBI agents who investigated the Inkster incident. The FBI was thrown off the track by the false statement, and this enabled Mr. Langh and his accomplice to complete the third larceny five months later, as the district court saw it.
 
 
 16
 During the plea hearing Mr. Langh denied that Mr. Minkeson gave the impression to the driver of the armored car that Langh was being robbed, denied that Minkeson intended to give such an impression, and denied that he (Langh) held his hands up, a statement later contradicted by the trial testimony. Under these facts, it seems to us, the district court did not commit clear error in refusing to grant Mr. Langh a reduction for acceptance of responsibility.
 
 
 17
 Mr. Langh also argues that the district court considered various improper factors, including his social, educational, and family status and his drug use history.[1] As to Mr. Langh's prior drug use, the court commented on it only in passing, noting an instance in which Mr. Langh had lied to a probation officer about his drug use. The court's comments concerning Mr. Langh's employment history were also directed at an instance in which he had misled the probation officer. The court's comments concerning Mr. Langh's family history appear to have been in response to an argument by defense counsel that Langh's family background warranted a more lenient sentence. Moreover, the court stated at sentencing that it was relying "primarily upon the fact that there was a firearm involved in this offense." This factor alone would seem to support Mr. Langh's sentence. Unless we conclude that Mr. Langh's sentence would have been different absent consideration of allegedly improper factors, we will not disturb the sentence. See Williams v. United States, 112 S.Ct. 1112, 1120-21 (1992). Because the court placed so much emphasis on the use of a firearm in connection with the offense,[2] we cannot say that the court would have reached a different result absent any mention of the other factors that Mr. Langh finds objectionable.
 
 
 18
 Finally, Mr. Langh argues that it was impermissible for the district court to enhance his sentence based on the use of a firearm because the jury found him guilty only of larceny, and not robbery. Mr. Langh relies in this connection on United States v. Brady, 928 F.2d 844 (9th Cir.1991), where a divided panel of the Ninth Circuit wrote that it would "pervert our system of justice" to allow a defendant to suffer punishment "for a criminal charge for which he or she was acquitted." Id. at 851. Our circuit, however, has held that "an acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense." United States v. Duncan, 918 F.2d 647, 652 (6th Cir.1990). The present panel is not free to overrule the published opinion in Duncan (see § 10.2 of the Court Policies of the United States Court of Appeals for the Sixth Circuit), and it is clear under Duncan that the verdict returned by the jury in the case at bar did not preclude the district court from concluding that the use of a weapon was established by a preponderance of the evidence.
 
 
 19
 The larceny guideline, § 2B3.1(b)(2), does not provide for an enhancement for firearm use. An upward departure is permissible if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see also U.S.S.G. § 5K2.0. Under United States v. Joan, 883 F.2d 491 (6th Cir.1989), the propriety of an upward departure is assessed under a three-part analysis. First, it must be determined whether the case is sufficiently unusual to warrant a departure. This is a question of law. Second, we must ask whether the district court committed clear error in determining that circumstances that would warrant departure actually existed. Finally, we must assess the departure against a standard of reasonableness. See Joan, 883 F.2d at 494. The trial judge's determination must be given great deference, and, "unless there is little or no basis for the trial court's action in departing, it must be upheld, provided the trial court has recognized that departure is the exception, and has adequately articulated its reasons for departure." Id. at 496.
 
 
 20
 Applying the Joan analysis here, we are satisfied that the instant case is sufficiently unusual to warrant a departure; that the district court committed no clear error; and, giving the district court's determination the great deference to which it is entitled, that the departure (the reasons for which were adequately articulated) was not unreasonable.
 
 
 21
 AFFIRMED.
 
 
 22
 * * *
 
 
 
 [1]
 The court stated:
 "Well, Mr. Langh, you're obviously an intelligent person. You had a good military record; I might call it an excellent military record. You've had some advantages that I think, as the United States attorney said, a lot of people who appear in court involved in serious trouble with the law haven't had, but you certainly got yourself in--in a mess of trouble."
 "I notice further that you don't seem to be a person that takes your family responsibilities very seriously. You have a child born to your first marriage. You indicated that you've lost contact with her and with your daughter, age five, from that relationship. You've indicated that there's no formal agreement about your support of the child but that until you lost track of the child, you've been paying $30 a week--interesting sum in light of the fact that we're talking about $457,000 that was involved in these various larcenies between yourself and Mr. Minkeson."
 
 
 [2]
 In a subsequent written statement of reasons explaining the upward departure, the court said that it found "abundant reason" to depart from the guideline range, "[g]iven the fact that a firearm was utilized in this offense...."