**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Donald ROBINSON, Jr., Defendant–Appellant.**

No. 96–6627.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1998.

Decided June 9, 1998.*

Ordered Published Aug. 17, 1998.

---

* This decision was originally issued as an "unpub-    lished decision" filed on June 9, 1998.

Michael J. Stengel (argued and briefed), Memphis, Tennessee, for Defendant–Appellant.

Cam Towers Jones (argued and briefed), Assistant U.S. Attorney, Office of the U.S. Attorney, Memphis, Tennessee, for Plaintiff–Appellee.

Before: BATCHELDER and MOORE, Circuit Judges; BORMAN, District Judge.**

## OPINION

BORMAN, District Judge.

Defendant James D. Robinson, Jr., appeals from the sentence imposed by the district court on his pleas of guilty to wire fraud and mail fraud. At issue is whether the district judge erred in (1) imposing a 2–level enhancement under the "Vulnerable Victim" U.S. Sentencing Guideline, § 3A1.1(b), and (2) in denying a 2– or 3–level reduction under the "Acceptance of Responsibility" Guideline, § 3E1.1.

For the reasons stated herein, we affirm the sentencing decisions of the district judge.

### BACKGROUND

On November 7, 1995, Defendant James D. Robinson, Jr. was named in a 49–count indictment charging mail fraud, 18 U.S.C § 1341; wire fraud, 18 U.S.C. § 1343; and money laundering, 18 U.S.C. § 1957. This indictment related to a telemarketing operation during the 1990–93 time period.[1]

On July 30, 1996, an arrest warrant was issued for Defendant Robinson for allegedly threatening to kill his cooperating co-defendant, Dawit Tessema. After his arrest, Defendant Robinson plead guilty on August 5, 1996, pursuant to a Rule 11 plea agreement,[2] to two counts: Count 1, wire fraud 18 U.S.C. § 1343; Count 4, mail fraud, 18 U.S.C.

---

** The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. In 1994 Congress enacted a statutory enhancement of penalties for persons convicted of telemarketing fraud. 18 U.S.C. § 2326. That provision does not apply to the instant case, which terminated in 1993.

2. Fed.R.Crim.P. 11(e) provides for a "Plea Agreement Procedure." "The attorney for the government and the attorney for the defendant ... may engage in discussion with a view toward reaching an agreement...."

§ 1341. As part of the plea agreement, the parties agreed in paragraph 10 that Defendant would not be charged with tampering with a witness, 18 U.S.C. § 1512, and that his sentence would be enhanced by two points for obstruction of justice pursuant to Sentencing Guideline 3C1.1.[3]

Defendant's plea agreement with the United States stated in paragraph 12(b):

> Both parties recognize that the United States will argue for assessment of points for Vulnerable Victim (3A1.1),.... The United States will oppose a deduction for Acceptance of Responsibility (3E1.1) and the defendant will seek this reduction.

The District Court held, at the sentencing hearing on November 25, 1996, that the Defendant should receive the 2 point guideline enhancement for vulnerable victims under § 3A1.1(b), and that he should not receive a guideline reduction for acceptance of responsibility under § 3E1.1.

*U.S. Sentencing Guideline 3A1.1(b): Vulnerable Victim*

The standard of review of the district court's finding of a vulnerable victim enhancement under Sentencing Guideline 3A1.1 was set forth by the Sixth Circuit in *United States v. Smith*, 39 F.3d 119, 122 (6th Cir. 1994):

> This court applies a clearly erroneous standard of review to the district court's factual findings, and while giving due deference to the district court's application of the guidelines to those facts, it renders *de novo* review of the district court's legal conclusions.

**3.** U.S. Sentencing Guideline 3C1.1 provides:
  If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. Defendant does not appeal from this enhancement.

**4.** Fed.R.Crim.P. 32(c)(1) states:
  At the sentencing hearing the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determination and on other matters relating to the appropriate sentence and must rule on any unresolved objections to

U.S. Sentencing Guideline Section 3A1.1(b) states:

> (b) If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

On November 26, 1996, pursuant to Fed. R.Crim.P. 32(c)(1),[4] the District Judge conducted a sentencing hearing to resolve the issue of the applicability of Guideline 3A1.1(b). The hearing included the testimony of witnesses and the introduction of exhibits on the issue of whether or not the Defendant[5] had targeted vulnerable victims. The Government introduced a spread sheet exhibit (App., pp. 244–262) that contained the following information relevant to telemarketing victim Clarence Hawthorne:

> *The Court:* It is Clarence Hawthorne .... is from Texas, was contacted four times and made this much money. Is this the amount that they paid?
>
> [AUSA] Ms. Jones: Yes, your Honor. The four checks should be listed separately out beside the date that the checks were sent in.
>
> *The Court:* Right. $499.90 on September 10, 1991; $1,472.00 on December 16, 1991; $599.00 on October 1, 1991; and $3,561.00 on March 25, 1992.

App., pp. 161–162.

The Court further noted, with regard to certain victims making multiple payments to Defendant's company:

> If you will look at ... Exhibit 6 (App. pp. 244–262), when you go through the spread sheet, it is frankly quite amazing, it shows

the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

**5.** "The [telemarketing] company was run and owned by Mr. Robinson. Mr. Tessema was the office manager of the company." Testimony of U.S. Postal Inspector Jack Dietz, Sentencing Hearing, November 26, 1996, App. p. 172.

that many people made multiple payments. I'm frankly astounded, it shows that very early, a Nora Aaron made multiple payments. Archer well, a person named Quiller Archer made three payments, one of $2,100, one of $599 and one of $2,500. Odessa Ashton from Bowie, Texas made five payments, and they're all reflected, they are large amounts of money, they are all hundreds and hundreds and hundreds of dollars all reflected in the report ... [Y]ou have got James Breneman, made multiple payments, three payments. Belva Bravo made three payments. Florence Brookland made three payments.... Ada Calkins made at least five payments. At least it looks like five payments here.

App., p. 173.

In analyzing the impact of multiple payments on the vulnerable victims guideline provision, the district judge noted:

So was the first payment a situation involving a vulnerable victim? The answer is no. That was a blanket dragnet. That does not constitute a basis for enhancement. I want to be very clear about that.

But where the reloads [6] and the—occur, we have a different analytical situation. Then we know that somebody consciously chose to go back and call these people again and call them again and again and again in some cases.

App., p. 174.

The sentencing judge subsequently discussed the application of Guideline section 3A1.1:

The question then is under 3A1.1 if the defendant knew or should have known that a victim of the offense was unusually vulnerable or particularly susceptible to criminal conduct. They knew after they got the first, quote, sales, whatever we want to call this money, that this person was particularly susceptible to criminal conduct. And based on that information, the repeat calls were made.

**6.** The use of the term reloads, to describe successive contacts to create multiple payments, was explained by Inspector Dietz:

A reload to the best of my knowledge, is that after a person has purchased initially from the company at a smaller dollar amount or an

. . .

These individuals as reflected in Exhibit 6 were particularly susceptible to the criminal conducts. They were repeatedly called because of their particular susceptibility .... there was a specific technique for reloading customers. There were repeated approaches made to victims who had proven to be particularly vulnerable in this case and in this operation: Under those circumstances, it is appropriate and I believe precisely what the additional language in 3A1.1(b) was placed there for, it is appropriate to enhance by two points.

App., pp. 175–76.

■ Sentencing Guideline § 3A1.1(b), and its accompanying Commentary do not provide a bright line test for this court to follow in determining whether to apply the vulnerable victim adjustment in the instant case. While the heading for § 3A1.1 uses the term "vulnerable victim," the text of the provision requires that the defendant knew or should have known "that a victim of the offense was unusually vulnerable." The use of the term "unusually" creates a heightened threshold of proof for application of this provision.

The text of Guideline 3A1.1 further delimits the applicability of the vulnerable victim enhancement by requiring that the vulnerability of the victim be related "to age, physical or mental condition." In the instant case, the sentencing judge did not rest his decision to apply the enhancement on the "vulnerable victim" portion of the Guideline because he did not make any determinations relating to the age, physical or mental condition of the victims. The sentencing judge relied on the second descriptive phrase in the text of § 3A1.1: "particularly susceptible." That second basis for the applicability of the § 3A1.1 enhancement states: "if the defendant knew or should have known ... that a victim was otherwise particularly susceptible to the criminal conduct." This language parallels that of the first phase of § 3A1.1,

initial dollar amount ... the company will recontact that individual attempting to get them to send in a larger amount promising them better or a higher level of prize or award. App., p. 165.

where the word "vulnerable" is modified by "unusually." Thus, insofar as the term "susceptible" is modified by the term "particularly," this creates a similar heightened factual requirement of proof to support the application of this provision.

The question before this Court is whether the government has established that a victim was "otherwise particularly susceptible to the criminal conduct." The Court begins its path toward an answer to this question by examining the Commentary to the Guideline.

Although the Commentary to § 3A1.1 provides assistance with regard to what constitutes an "unusually vulnerable" victim, it provides no assistance as to what constitutes a "particularly susceptible" victim. Commentary Application Note 2 states in pertinent part:

> Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile.

This Commentary then, offers no definition of the term "particularly susceptible," the critical phrase applicable to the instant case.

Defendant contends that the judge erred, and that the adjustment for vulnerable victim is not applicable to him because:

1. E & J Enterprises only contacted "a tiny percentage of people" because of the lead cards in its possession. (Appellant's Brief, p. 5)

2. a relatively small percentage of the people E & J target through lead cards made more than one payment. *Id.*

3. "[M]erely a handful of many thousands of people targeted by E & J enterprises through the lead cards it purchased made more than one payment to E & J." *Id.* at 8.

The government supported its case at the sentencing hearing for a vulnerable victim enhancement on repeated victimization—going after an individual who had been previously victimized, for a second, third, fourth or fifth time—by introducing the testimony of Postal Inspector Dietz and a spread sheet of victims of the telemarketing operation.

In *United States v. Smith, supra,* the Sixth Circuit held:

> Therefore, in order to enhance a defendant's base offense level under U.S.S.G. § 3A1.1, the evidence must show that the defendant knew his victim was unusually vulnerable and that he perpetrated a crime on him because he was vulnerable. It is not enough to show that the victim happened to be vulnerable at the time the crime occurred.

*Smith,* 39 F.3d at 124.

*Smith* held that the § 3A1.1 enhancement was not applicable to its facts because even though some of the victims were elderly and one had Parkinson's disease, there was "no evidence suggesting that Smith chose her victims because of any particular vulnerability." *Id.* at 124. "There was no evidence presented that there was any correlation between those potential vulnerabilities and the fraudulent scheme; it was more coincidental than intentional." *Id.* at 125.

In the instant case, the issue is whether the Government has established by a preponderance of the evidence that the victims were particularly susceptible. The evidence at the sentencing proceeding indicated that some victims were called back on multiple occasions, even up to a fourth or fifth occasion, because they had previously succumbed to the message.

Since the factual record before the district court established that some individuals had been victimized a fourth or fifth time, this court need not determine whether a mere second call to a prior victim supports the designation of that person as "particularly susceptible," and thereby supports the imposition of the § 3A1.1 upward enhancement.

On the record before this Court, we find no error in the district judge's decision, in the face of evidence presented at the sentencing hearing that when the defendant targeted a person or persons who had been

previously victimized four or five times, this amounted to targeting an individual who can be deemed "particularly susceptible" under Guideline § 3A1.1.

This Court notes that decisions from other United States Courts of Appeal, upholding the § 3A1.1 vulnerable victim upward adjustment, have also involved factual situations where an individual had been victimized on more than two occasions.

In *United States v. O'Neil*, 118 F.3d 65 (2d Cir.1997), the Second Circuit Court of Appeals noted that while being elderly was "alone insufficient to render an individual 'unusually vulnerable' within the meaning of § 3A1.1(b)," the enhancement was applicable because "an important part of the scheme was the reloading process, whereby individuals who already had been victimized by the scheme were contacted up to two more times and defrauded into sending more money to the companies." *Id.* at 75–76. The proof of reloading, getting individuals to make up to three separate payments (the original contract plus two more times) to the telemarketing firm, satisfied the Second Circuit's § 3A1.1(b) definition of unusually vulnerable or particularly susceptible.

■ In *United States v. Jackson*, 95 F.3d 500, 508 (7th Cir.1996), the Seventh Circuit Court of Appeals upheld the district court's application of § 3A1.1(b) enhancement, noting that some individuals had been victimized up to four times:

> [T]he district court clearly determined that their readiness to fall for the telemarketing rip-off, not once but twice (and in J.Z's case, four times) demonstrated that their personalities made them vulnerable in a way and to a degree not typical of the general population.

*Id.* The Seventh Circuit further noted, and we concur, "that the Guidelines do not imply that all of the victims must have been unusually vulnerable in order to apply the enhancement. It is enough if the defendant targeted any of the victims because of their unusual vulnerability." *Id.* at 508 n. 11.

Accordingly, we conclude that the district court did not err in imposing the § 3A1.1(b) two point sentencing enhancement.

*U.S. Sentencing Guideline 3E1.1: Acceptance of Responsibility*

■ The Sixth Circuit Court of Appeals applies the due deference standard to a trial judge's decision regarding whether or not to reduce a defendant's offense level for acceptance of responsibility, U.S.S.G. § 3E1.1. In *United States v. Downs*, 955 F.2d 397, 401 (6th Cir.1992), this court stated that "a district court's findings will be given great deference in this matter and a challenge will be successful only in extraordinary circumstances." The *Downs* decision noted that this court, had previously stated, in *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989), that the district court's factual determination of whether a defendant has accepted responsibility for his crime enjoys the protection of the clearly erroneous standard. *Downs*, 955 F.2d at 400.

The due deference standard is in accord with the Commentary in Application Note 5 to this Sentencing Guideline:

> 5. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

Sentencing Guideline § 3E1.1 provides:

> "(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." [7]

■ In the instant case, Defendant contends that his threatening conduct that supported the enhancement for obstruction of justice, did not provide a basis for denying him a downward adjustment for acceptance of responsibility.

The relevant Commentary to Guideline 3E1.1 states:

*Application Notes:*

1. In determining whether a defendant qualifies under subsection (a), appropriate

---

7. Subsection (b) provides for an additional 1–point reduction in certain situations where the defendant has qualified by the "a" reduction. In

the instant case, the preliminary issue is whether Defendant qualifies for the two-level "a" reduction.

considerations include, but are not limited to the following:

.    .    .    .    .

(b) voluntary termination or withdrawal from criminal conduct or associations.

.    .    .    .    .

(h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

.    .    .    .    .

3.... A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

4. Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

In the instant case, the parties stipulated in the Rule 11 plea agreement that the Defendant would receive an upward "Adjustment for Obstruction of Justice." The Presentence Report stated: "Robinson attempted to obstruct justice by threatening co-defendant Tessema, therefore, two levels are added pursuant to U.S.S.G. § 3C1.1." Defendant's sentencing memorandum to the district court conceded "the propriety of the obstruction enhancement," but contended that this was "one of those cases" under which "both §§ 3E1.1 n. 4 (obstruction) and 3E1.1 (acceptance)" apply. (Defendant's Sentencing Memorandum, App. pp. 124–125). In essence, Defendant contended that his threat should have been excused because Defendant acted while in a drunken stupor, and further, because Tessema was a notorious liar.

The Government's sentencing memorandum to the district court objected to the defendant receiving points for acceptance of responsibility, *inter alia,* for these reasons:

1. Mr. Robinson did not provide information to the government in a timely manner permitting the government to avoid trial preparation. Application note 1(h). In fact, Mr. Robinson did not acknowledge any involvement until he was arrested for threatening the primary witness against him.

App. p. 134.

The district judge, having been advised by the arguments, rejected Defendant's contentions, and concluded that this was not one of those "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."

The Defendant had many factors stacked against him:

1. He did not voluntarily withdraw from criminal conduct—he threatened to kill his cooperating co-defendant.

2. His plea was somewhat untimely, in that it only came after his arrest for threatening to kill his cooperating co-defendant.

3. He acted to obstruct justice.

In this case, the sentencing judge was clearly in a unique position to evaluate Defendant's claim for a reduction on the basis of acceptance of responsibility. This court finds no basis for not granting deference to the sentencing judge's determination. The district judge's decision to reject Defendant's claim for acceptance of responsibility is AFFIRMED.

For the aforestated reasons, we affirm the decision of the district court applying the two level enhancement pursuant to U.S. Sentencing Guideline 3A1.1(b), and denying the reduction for acceptance of responsibility pursuant to § 3E1.1