**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antionette L. JOHNSON, Defendant–
Appellant.**

**No. 01–5528.**

United States Court of Appeals,
Sixth Circuit.

Jan. 6, 2003.

Before KEITH, KRUPANSKY, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Antoinette L. Johnson, appeals from the judgment of conviction and sentence entered by the district court on March 30, 2001, following Defendant's guilty-plea conviction to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371, and one count of bank fraud in violation of 18 U.S.C. § 1344, for which Defendant was sentenced to concurrent terms of sixteen months' imprisonment and a total of five years' supervised release, and ordered to pay $26,358 in restitution.

On appeal, Defendant raises three challenges all in connection with her sentence and restitution order. For the reasons set forth below, we AFFIRM Defendant's sentence and restitution order.

## STATEMENT OF FACTS

### Procedural History

On August 9, 2000, a federal grand jury sitting in the Western District of Tennessee returned a six-count indictment against Defendant. Count one charged Defendant and co-defendant, Patrick Crawford, with conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. Counts two through five charged Defendant and Crawford with aiding and abetting each other in substantive violations of the federal bank fraud statute, 18 U.S.C. §§ 1344 and 2. Count six of the indictment charged Defendant alone with bank fraud in violation of 18 U.S.C. § 1344.

Defendant executed a written plea agreement on January 2, 2001, to counts one and six of the indictment. The district court sentenced Defendant on March 30, 2001, to concurrent terms of sixteen months' imprisonment to be followed by a total of six years' supervised release, and ordered Defendant to pay $26,358 in restitution. This timely appeal ensued.

### Facts

At all times relevant to this case, Defendant was employed as an intermediate account technician at Union Planters Bank ("the Bank") and was responsible for handling invoices received from vendors who performed work. In this capacity, Defendant had the authority to open vendor accounts. Defendant was dating co-defendant Crawford, and opened a vendor account styled "Patrick M. Crawford, LLP," on the Bank's Accounts Payable Online System. According to the indictment, once the account was open, Defendant in some instances issued checks payable to Crawford, while in other instances Defendant made electronic transfers to Crawford's account by creating fraudulent invoices for non-existent expenses and charging the expenses to various cost centers within the Bank. The first fraudulent invoice submitted by Defendant was for $680, and was allegedly done at Crawford's behest so that he could pay his rent. Defendant admits to destroying the fraudulent invoices used to obtain money for Crawford's account once the Bank became aware of the activity, but claims that she was only responsible for submitting and processing the invoice for $680. According to the indictment, the Bank paid out a total of $18,858 to Crawford's bogus account based on the fraudulent invoices, and it is undisputed that Crawford received all of the monies.

In addition, Defendant created fraudulent invoices under another vendor account number and caused the Bank to issue an expense check to Toyota Motor Credit Corporation for $7,500, which Defendant used to purchase a car. This act served as the basis for count six of the indictment.

Defendant pleaded guilty to counts one and six of the indictment and, the day after her guilty plea was entered. Defendant was interviewed by government agents. When asked by the agents about the car that Defendant purchased with the $7,500, Defendant replied that the vehicle had been repossessed while in her possession. Defendant later admitted, however, that the vehicle had been repossessed from another individual who had purchased it from Defendant.

## DISCUSSION

### I. DENIAL OF A REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY

This Court reviews a district court's factual findings at sentencing for clear error,

and its application of the sentencing guidelines *de novo. United States v. Pierce,* 17 F.3d 146, 151 (6th Cir.1994). Where the facts are undisputed, which is not the case here, the question of whether the district court properly applied the sentencing guidelines to a particular set of facts is a question of law which the court reviews *de novo. United States v. Tilford,* 224 F.3d 865, 867 (6th Cir.2000).

Section 3E1.1 of the United States Sentencing Guidelines provides for a two or three level reduction in a defendant's offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a) and (b). Application note 3 to § 3E1.1 provides that

> [e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 3B1.3 ... will constitute significant evidence of acceptance responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

USSG § 3E1.1 comment. (n.3). Application note 1 to § 3E1.1 lists eight factors that a district court may consider in determining the appropriateness of an adjustment under this section, among which is "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable...." USSG § 3E1.1 comment. (n.1(a)). A district court's findings as to the applicability of § 3E1.1 are entitled to great deference on

review and "a challenge will be successful only in extraordinary circumstances." *United States v. Downs,* 955 F.2d 397, 400 (6th Cir.1992); *see also* USSG § 3E1.1 comment. (n.5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

In denying Defendant's request for a two-level reduction for acceptance of responsibility, the district court considered testimony from the Bank's manager, Shirley Austin, as to how invoices were paid and payments were credited to accounts. The district court also considered testimony from Defendant that she had only approved the $680 invoice payment to Crawford's account, and that she was unaware of how the other invoice payments were credited to Crawford's account. The clear implication of Defendant's testimony was that someone else at the Bank had to be assisting Crawford in receiving the bogus payments to his account because, as Austin and Defendant both agreed, the invoices would not have been paid without the signature of a cost center manager. In other words, according to Defendant, because she only processed the first bogus invoice for $680, meaning that other technicians in Defendant's capacity processed the other bogus invoices, some other individual at the Bank had to be forging the signature of a cost center manager or a cost center manager himself had to be assisting Defendant.

Having considered this testimony, the district court opined in relevant part:

> Ms. Johnson [Defendant] is a convicted felon. She engaged in fraudulent conduct with the bank and was supposed to then believe her on one point and we know that she committed, made untruthful statements. She admits that she

made untruthful statements at other times.

How am I—how could I place credence in Ms. Johnson's—in the defendant's testimony, her testimony is, I've seen her, and her testimony is contradicted by reliable testimony and she has every reason to state things in the light most favorable to herself. She has a personal self interest in the case and frankly her testimony doesn't make very much sense. The fact is that she had a romantic relationship with Mr. Crawford.

\* \* \* \* \* \*

And she set up an account that was a nonexistent account and allowed a $680 check to be drawn payable to his company or his entity that he could then negotiate the check from.

She admits that later on she got $7,500 she says, but in between I didn't do it, I didn't know what Mr. Crawford was doing and you should believe my speculation that some unknown person in the department also cooperated with him in approving invoices but I already know who was in the department and who approved the invoices in the first place.

\* \* \* \* \* \*

I've heard from Ms. Austin, who is very knowledgeable, who explained it to me very clearly and carefully, I understand what she is saying, her version of this completely supports the conclusion that Ms. Johnson, the defendant, is not telling the truth.

(J.A. at 152–55.) The district court then denied Defendant's request of the two-level reduction for acceptance of responsibility.

On appeal. Defendant argues that the district court erred in its factual finding that Defendant's testimony conflicted with Austin's testimony because, according to Defendant, both Austin and Defendant testified that the bogus invoices would not have been processed without the signature of a cost center manager. And, pursuant to Austin's testimony, Defendant contends that she could not have been the individual forging the signature of the cost center manager because Defendant was not "working up" invoices–i.e., the invoices would have gone to other individuals before reaching Defendant. Defendant's Brief at 14 (citing J.A. at 122–23.)

■ Defendant's argument fall short of the mark inasmuch as it ignores the fact that the bogus invoice for $680, the invoice that Defendant admits to processing, likewise would have to have gone to someone else before reaching Defendant, according to Austin's testimony, and if Defendant found a way to process that invoice, she likewise could have found a way to process the other invoices as well. In addition, the $680 invoice aside, there is nothing to indicate that Defendant did not have access to the invoices before they reached the individuals who worked them up. Defendant also failed to come forward with the name of any other individual at the Bank who may have been assisting Crawford. Simply stated, although it is true that Austin testified that the individuals working up the invoices would have received them before Defendant, and that those individuals would not have continued to process the invoices without the signature of a cost center manager, there is nothing to indicate that Defendant did not have access to the invoices, albeit unofficially, before they reached the work up people. Therefore, the district court's findings that Defendant was not truthful in her testimony as to her role in the offense was not clearly erroneous, and this case does not present "extraordinary circumstances" for purposes of

concluding otherwise. *Downs*, 955 F.2d at 400.

Defendant argues in the alternative that the district court did not make a finding that Defendant's untruthful statement to agents, that she owned the vehicle when it was repossessed when actually Defendant had sold the vehicle to someone else, was relevant conduct for purposes of denying a reduction under § 3E1.1. Defendant recognizes that the PSR indicates Defendant's untruthful statements in this regard as being relevant conduct for purposes of not allowing the reduction; however. Defendant claims that because the district court did not specifically adopt the PSR, the findings therein cannot serve as a basis to support the district court's decision.

We need not reach this argument inasmuch as the district court's findings were not clearly erroneous based on Defendant's failure to admit her role in the offense as indicated above. However, to the extent the argument is considered, and to the extent the Court accepts Defendant's argument, the fact remains that the record, via the PSR, supports the district court's denial of the reduction under § 3E1.1 for acceptance of responsibility. *See United States v. Allen*, 106 F.3d 695, 700 n. 4 (6th Cir.1997) (finding that this Court may affirm a district court for any reason supported by the record).

## II. SENTENCING AT THE HIGH END OF THE GUIDELINES.

The statutory maximum penalty for a violation of 18 U.S.C. § 371, conspiracy to commit bank fraud, count one of the indictment to which Defendant pleaded guilty, is five years. The statutory maximum penalty for violation of 18 U.S.C. § 1344, bank fraud, count six of the indictment to which Defendant pleaded guilty, is thirty years. Defendant's range under the guidelines was ten to sixteen months' imprisonment.

At the sentencing hearing, the district judge considered an enhancement for obstruction of justice under USSG 3C1.1, but decided not to apply the enhancement opining that "I do think we have got some problems here, but I think that we can deal with it [the obstruction] within the sentencing range." (J.A. at 156.) The district court later sentenced Defendant to sixteen months' imprisonment on each count, to be served concurrently, which was the maximum amount under the guidelines range. (J.A. at 168.) On appeal, Defendant argues that the district court's sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because the district court impermissibly accounted for Defendant's obstruction at sentencing. The Defendant's argument is wholly without merit.

■ In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, a proved beyond a reasonable doubt." 536 U.S. at 490, 122 S.Ct. 2191. *Apprendi*, by its terms, applies only where the finding "increases the penalty for a crime beyond the prescribed *statutory* maximum," *id.* (emphasis added), and this Court has squarely held that *Apprendi* does not apply to the sentencing guidelines. *See United States v. Garcia*, 252 F.3d 838, 843 (6th Cir.2001) ("*Apprendi* does not purport to apply to penalties in excess of any particular range or based on any particular offense level under the Sentencing Guidelines."). In addition, where a defendant's claim is not based on a specific legal error and the sentence falls within the guidelines range, this Court has held that it lacks jurisdiction to review the claim. *See United States v. Lovins*, 993 F.2d 1244, 1245–46 (6th Cir.1993). As a

result, Defendant's claim is wholly without merit, and this Court lacks jurisdiction to consider this claim in any event.

## III. ALLOCATING ALL RESTITUTION TO DEFENDANT

This Court reviews the availability of restitution *de novo* and reviews the amount of restitution ordered under an abuse of discretion standard. *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992).

Defendant argues that the district court erred in ordering Defendant to pay the total amount of restitution owed, instead of allocating only a portion thereof to Defendant. However, Defendant provides no authority in support of her argument and, as a result, on this basis alone her claim should fail. *See Figueroa–Rubio v. INS*, 108 F.3d 110, 112 (6th Cir.1997) (noting that a claim not supported by authority is deemed waived on appeal). However, even when considering Defendant's claim on the merits, the district court did not err in ordering restitution, and did not abuse its discretion in ordering that Defendant pay the total amount owed.

Section 5E1.1 of the guidelines states in relevant part that "[i]n the case of an identifiable victim, the court shall (1) enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § 3663." USSG 5E1.1(a)(1). Section 3663 provides in relevant part that "[t]he court, when sentencing a defendant convicted of an offense under this title [Title 18] ... may order ... that the defendant make restitution to any victim of such offense...." 18 U.S.C. § 3663(a)(1)(A). Section 3663(a)(3) provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

In the matter at hand, Defendant was convicted of two offenses under Title 18, conspiracy to commit bank fraud and bank fraud, and she agreed to pay restitution in her plea agreement. Therefore, it is clear that the district court did not err in ordering Defendant to pay restitution. *See* 18 U.S.C. § 3663(a)(1)(A), (a)(3); USSG 5E1.1(a)(1). As to the amount the district court ordered Defendant to pay, the full amount of money owed to the Bank, under 18 U.S.C. 3664(h), the district court's order was not an abuse of discretion. Pursuant to § 3664(h), "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). Because Defendant and Crawford conspired to commit the bank fraud in this case, the district court was within its discretion in ordering Defendant to pay the full amount, particularly where, as found by the district court, the bank fraud could not have occurred as it did without Defendant's assistance.

## CONCLUSION

For the above-stated reasons, we AFFIRM Defendant's sentence and restitution order.